**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HG VORA CAPITAL MANAGEMENT, LLC, HG VORA SPECIAL OPPORTUNITIES MASTER FUND, LTD., and DOWNRIVER SERIES LP – SEGREGATED PORTFOLIO C, on behalf of themselves and derivatively on behalf of PENN ENTERTAINMENT, INC., | Case No.: 5:25-cv-02313-CH |
| Plaintiffs, | |
| -against- | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STAY** |
| PENN ENTERTAINMENT, INC., JAY SNOWDEN, VIMLA BLACK-GUPTA, ANUJ DHANDA, DAVID HANDLER, MARLA KAPLOWITZ, JANE SCACCETTI, BARBARA SHATTUCK KOHN, RONALD NAPLES, and SAUL REIBSTEIN, | |
| Defendants, | |
| -and- | |
| PENN ENTERTAINMENT, INC., | |
| Nominal Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STAY**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .....................................................................................................................2

ARGUMENT ..........................................................................................................................9

   I.   PLAINTIFFS' FIDUCIARY CLAIM IS SUBJECT TO A MANDATORY STAY
       FOR THE DURATION OF THE SLC INVESTIGATION. ................................................9

   II.  THE COURT SHOULD STAY THE REMAINING CLAIMS PURSUANT TO
       ITS INHERENT POWER TO CONTROL ITS DOCKET. ............................................14

      A.  Plaintiffs' Count IV is duplicative of its fiduciary duty claim and should be
          stayed. ....................................................................................................................14

      B.  Plaintiffs' remaining Counts should be stayed. ..........................................................16

CONCLUSION.....................................................................................................................19

APPENDIX A ................................................................................................................... A-1

# PRELIMINARY STATEMENT

At next month's annual meeting, the shareholders of PENN Entertainment, Inc. ("PENN" or the "Company") will elect two new directors to the two open seats on the Company's board of directors. Not one of the Company's incumbent directors will be re-seated. Both of the new directors were proposed by plaintiffs in this litigation—affiliates of the activist hedge fund HG Vora. But, refusing to take yes for an answer, plaintiffs have brought this litigation to ask the Court to create another seat on the board that does not now exist and to transform an uncontested director election into a contested one to justify the make-believe (and value-destructive) proxy fight plaintiffs have been waging against PENN.

At the core of plaintiffs' lawsuit is an alleged breach of fiduciary duty by PENN's board: plaintiffs say that the directors violated their fiduciary duties when they exercised their power under the Company's bylaws and Pennsylvania statutory law to eliminate a vacancy on the board created by the retirement of an incumbent director last month. In their complaint, plaintiffs tack on to this central theory a smattering of additional claims, including several under the federal securities laws to invoke this Court's jurisdiction, all of which derive from and are predicated upon the alleged fiduciary breach. Plaintiffs do not seek interim or injunctive relief in advance of next month's stockholder vote; they instead propose an expedited trial half a year from now.

That proposal should be denied, and this matter should be stayed. Under bedrock Pennsylvania law, fiduciary duties run only to the company—not individual shareholders—and claims of breach thus belong to and are controlled by the corporation itself. Pennsylvania's Business Corporation Law expressly empowers corporations to vest control of such litigation in the hands of a special litigation committee, and the statute provides for a mandatory stay of any shareholder-filed litigation to allow such a committee time to complete its work. That stay is

triggered here: PENN's board has constituted an independent special litigation committee (the "SLC") that has retained independent counsel and is now prepared to begin its work expeditiously.

No good cause exists to deny a stay. Plaintiffs concede that their fiduciary claims are derivative and that they have made no demand on the Company for the right to prosecute the Company's claims themselves. The sole basis they invoke to justify this suit is the alleged "imminent" harm that will result from next month's election, where plaintiffs say the shareholders will cast votes under the supposedly misleading impression that there are two open seats on the board instead of three. But plaintiffs do not seek to block that election or any relief in advance of it. There is thus zero urgency whatsoever that could override the statutorily mandated stay in favor of the special litigation committee process. And that stay logically extends to the remainder of this lawsuit. Every claim in plaintiffs' complaint turns on whether the size of the board was properly fixed by PENN's directors, and the only reason plaintiffs offer that it was not is the alleged fiduciary breach.

Defendants thus move the Court to stay this litigation as required by Section 1783(b) of the Pennsylvania Business Corporation Law.

## BACKGROUND

PENN Entertainment, Inc. is a leading entertainment and gaming company incorporated in Pennsylvania and headquartered in Berks County. PENN's roots trace back to the Penn National Race Course, established in 1972 in Grantville, Pennsylvania by a group of Central Pennsylvania business leaders.[1] PENN has since grown into a publicly traded company with over 20,000 employees and the largest and most diverse gaming footprint in North America, operating 42 brick-and-mortar casinos and racetracks across 19 states (including four casinos in Pennsylvania) while

---

[1] PENN Ent., *History*, https://www.pennentertainment.com/corp/our-company/history (last visited May 18, 2025).

also developing a robust online gaming and sports betting presence.[2]

PENN's board of directors consists of eight members with wide-ranging backgrounds, including deep expertise in the gaming industry. Seven are unaffiliated with management and independent under NASDAQ rules. In accordance with governing documents and Pennsylvania law, PENN's board is separated into three classes, with each class serving a three-year term. PENN Articles of Incorporation § 6(a); PENN Bylaws § 4.03(d). At each of PENN's annual shareholder meetings, PENN's stockholders vote on the class of directors up for election or reelection that year. PENN's 2025 annual shareholder meeting (the "Annual Meeting") is to be held on June 17, 2025 and PENN's shareholders will vote on the two individuals nominated as Class II directors.

PENN operates in a highly regulated industry and must obtain and maintain gaming licenses from state gaming authorities in each jurisdiction in which it operates. The state gaming authorities have broad discretion in issuing and renewing gaming licenses and look at, among other things, the character and integrity of the applicant. In addition, many states require PENN stockholders who own more than a certain percentage of voting stock—typically 5%—to also obtain state gaming licenses. But if such a stockholder is an institutional investor who holds the stock for passive investment purposes only—not for the purposes of, for example, changing members of the company's board or enacting other governance changes at the company—the stockholder can apply for an "institutional investor waiver" in lieu of obtaining a gaming license.[3]

Plaintiffs are various entities that form part of HG Vora Capital Management, LLC (collectively, "HG Vora"), a self-described "event driven" and "opportunistic" investment

---

[2] PENN Ent., https://www.pennentertainment.com/ (last visited May 18, 2025).
[3] PENN Ent., Annual Report (Form 10-K), Ex. 99.1, (Feb. 27, 2025),
https://www.sec.gov/ix?doc=/Archives/edgar/data/0000921738/000092173825000008/penn-20241231.htm.

manager based in New York City that was fined in 2024 by the SEC for violations of the Securities Exchange Act of 1934.[4]  HG Vora is a PENN stockholder and, as of early 2023, it held a 6.6% stake in the Company.  HG Vora represented to both the SEC and state gaming authorities that its investment in PENN was passive, *i.e.*, not acquired or held for the purpose of changing or influencing the control of PENN.[5]  Based on this representation, HG Vora succeeded in obtaining institutional investor waivers from the relevant gaming authorities.

Nevertheless, in December 2023, HG Vora told PENN that it was seeking the right to appoint two directors to the PENN board and make other changes—directly in violation of its institutional investor waivers.  Ex. A at 11 (PENN Ent. Form 8-K, Apr. 28, 2025 – Ex. 99.3, Supplemental Information Regarding Engagement with HG Vora Capital Management, LLC).  A few days later, HG Vora disclosed these intentions in an SEC filing.[6]  It also disclosed that it had increased its stake in PENN to 18.5%, consisting of ownership of 9.6% of PENN's common stock and the remainder in derivative instruments.  *Id.*

HG Vora's filing triggered a flurry of activity from the state gaming authorities—several of which declared HG Vora's actions impermissible and instructed PENN to limit engagement with HG Vora while HG Vora's licensure status was under review.  Ex. B at 6 (PENN Ent. Form Def 14A, S'holder Letter, May 15, 2025); Ex. A at 11 (Ex. 99.3).  As a result, HG Vora had certain of its institutional investor waivers revoked and was required to apply for state gaming licenses. Ex. A at 11-12 (Ex. 99.3).

---

[4] HG Vora, *Who We Are*, https://www.hgvora.com/who-we-are (last visited May 18, 2025); Securities and Exchange Commission, "SEC Charges Advisory Firm HG Vora for Disclosure Failures Ahead of Ryder Acquisition Bid," Mar. 1, 2024, https://www.sec.gov/newsroom/press-releases/2024-30.
[5] HG Vora, Schedule 13G (Feb. 14, 2023), https://www.sec.gov/Archives/edgar/data/921738/000121465923002499/penn213236sc13g.htm.
[6] HG Vora, Schedule 13D (Dec. 28, 2023), https://www.sec.gov/Archives/edgar/data/921738/000121465923016937/j1227232sc13d.htm.

HG Vora did not obtain the required licenses in 2024 and therefore was not eligible to nominate director candidates for PENN's 2025 Annual Meeting. Undeterred, HG Vora announced in a January 2025 SEC filing that it had "restructure[d] its investment," in PENN, reducing its ownership of common stock to less than 5% "while maintaining [its] economic interest" through the use of derivative instruments. This restructuring was made for the express purpose of avoiding licensure requirements in the state of Massachusetts. HG Vora claimed it was thereafter free to nominate directors.[7]

On January 29, 2025, HG Vora announced its intention to nominate three director candidates to stand for election at PENN's 2025 Annual Meeting. It nominated Johnny Hartnett, Carlos Ruisanchez, and William Clifford. Mr. Hartnett is the former CEO of Superbet Group, a betting and gaming company, and has over 20 years of experience in the entertainment and gaming industries, including with respect to online sports betting. Ex. A at 5 (Ex. 99.1, Press Release). Mr. Ruisanchez is the founding partner of Sorelle Capital and Sorelle Hospitality, hospitality, consumer, and real estate investment companies, and has experience as the CFO of a gaming entertainment company. *Id.* Mr. Clifford is the former CFO of Gaming & Leisure Properties and the former CFO of PENN Entertainment. Ex. B at 7. He had previously sought a seat on PENN's board in 2020, and the Company declined to offer him this position after determining he was not a suitable candidate based on an evaluation of his skills and experiences against the needs of the board. *Id.*

PENN's board has for some time been working to refresh itself, and it had engaged a national search firm to identify prospective directors, focusing most recently on identifying a

---

[7] HG Vora, Schedule 13D (Jan. 14, 2025), https://www.sec.gov/Archives/edgar/data/921738/000121465925000546/xslSCHEDULE_13D_X01/primary_doc.xml.

candidate with a digital background to support PENN's growing interactive and online segment. *Id*. The board promptly included all three of HG Vora's candidates in its ongoing director search process and interviewed each of them. The board determined that Mr. Hartnett's skills and profiles fit the profile of the search for a candidate with digital experience. It also determined that Mr. Ruisanchez's skills and background would be additive. Despite the Company having rejected Mr. Clifford as unsuitable in 2020, the board considered his candidacy this year, but following his interviews, it concluded that he remained unsuitable for several reasons, including: (1) Mr. Clifford lacks any digital gaming or sports betting experience and his skills and experiences are redundant with the significant financial and real estate experience already represented on the board—including with the experience of Mr. Ruisanchez; (2) while he was CFO of PENN, Mr. Clifford advocated against key initiatives to invest in properties in Pennsylvania and modernize PENN's infrastructure, software, and business to bring it into the 21st century, including the creation of a customer database and related loyalty program and the adoption of shared services, all of which were subsequently implemented at the Company and were essential in driving margin improvement; and (3) in his interviews, Mr. Clifford failed to demonstrate an appropriate level of open-mindedness about the Company's strategy. *Id*.

Hoping to avoid a costly proxy fight and to refresh the board, PENN worked to reach a resolution with HG Vora and offered to nominate Messrs. Hartnett and Ruisanchez for election to the board. But HG Vora refused to accept anything other than either (1) the appointment of all three of its nominees or (2) the appointment of two of its nominees plus certain governance and strategic changes that PENN was prohibited from discussing with HG Vora at the instruction of the state gaming authorities. *Id*. HG Vora notified PENN of this position on April 25, 2025.

That day, the board met. Barbara Shattuck Kohn and Saul Reibstein, two incumbent Class II directors whose terms expired at the 2025 Annual Meeting, determined not to stand for reelection. The board determined to nominate two of HG Vora's nominees—Messrs. Hartnett and Ruisanchez—as the Company's nominees for election to the board. Also on April 25, 2025, Ronald Naples, who had served on the board since 2013, tendered his resignation from the board, effective immediately. Having identified no suitable candidate to nominate for the vacancy created by Mr. Naples' retirement, the board voted to decrease its size from nine to eight members and to decrease the number of Class II directors from three to two. *Id.* Historically, the Company's board size has fluctuated, with the board comprising fewer than nine directors prior to 2022.

The Company issued a press release on the afternoon of Friday, April 25, 2025, announcing the changes to the board and the Company's nomination of Messrs. Hartnett and Ruisanchez for election at the 2025 Annual Meeting. On the morning of Monday, April 28, 2025, the Company filed its definitive proxy with the SEC, listing Messrs. Hartnett and Ruisanchez as the Company's nominees for the 2025 Annual Meeting. Because there are only two seats up for election at the 2025 Annual Meeting and the Company and HG Vora have nominated the same two candidates for those two seats, the Annual Meeting is not a contested election. That same morning, the Company also filed an 8-K disclosing additional information concerning the board's reduction of its size following Mr. Naples' retirement and the Company's failed attempts to reach a resolution with HG Vora. Ex. A (PENN Ent. Form 8-K, Apr. 28, 2025).

HG Vora has filed its own proxy statement that seeks to solicit proxies for three nominees despite the fact that there are only two board seats available. Although HG Vora was notified of the board's decision to reduce its size on April 25, it did not file the instant action until May 7. The Complaint names as defendants the current members of the PENN board and Mr. Naples (the

"Director Defendants") and names the Company as nominal defendant (together with the Director Defendants, the "Defendants"). It alleges that the board breached its fiduciary duties to the Company by voting to reduce the size of the board following Mr. Naples' retirement (Count V). The Complaint also purports to bring additional state law claims that are duplicative of the breach-of-fiduciary-duty claim, as well as disclosure claims under the federal securities laws. Plaintiffs have made no demand on PENN's board to bring an action.

Although the Complaint states that harm will allegedly occur at the Annual Meeting, HG Vora has determined not to seek any relief in advance thereof. MTE 4.[8] Instead, HG Vora filed a motion to expedite with the Court on May 14, 2025 seeking a trial in November 2025—five months after the Annual Meeting. MTE 5.

On May 8, 2025, the PENN board voted to constitute a special litigation committee to review and investigate the facts and circumstances surrounding HG Vora's claim that the Director Defendants breached their fiduciary duties by reducing the size of the board. The board evaluated several potential candidates, conducted interviews, and selected Marc Sonnenfeld, Esq. and Richard Bazelon, Esq. On May 12, 2025, the board voted to appoint Messrs. Sonnenfeld and Bazelon to the committee. The next day, counsel for PENN informed HG Vora's counsel that the board had formed the special litigation committee, that Defendants would oppose plaintiffs' request for expedition, and that the action should be stayed while the special litigation committee conducts its investigation in accordance with well-established Pennsylvania corporate law.

Messrs. Sonnenfeld and Bazelon are highly respected members of the Pennsylvania Bar and experienced in SLC practice. Both are independent of PENN and the Director Defendants. Mr. Sonnenfeld practiced law at Morgan, Lewis & Bockius in Philadelphia for 50 years, retiring

---

[8] All citations to "MTE" refer to the plaintiffs' Mem. In Support Of Motion to Expedite at Dkt. 13.1.

from the firm in 2024.  Mr. Bazelon has been practicing law since 1969 and is a founder, partner, and principal of Bazelon Less & Feldman in Philadelphia.  The SLC has retained Dilworth Paxson LLP as its independent counsel and is prepared to work expeditiously to investigate the facts and circumstances surrounding plaintiffs' claim for breach of fiduciary duty.

## ARGUMENT

### I. PLAINTIFFS' FIDUCIARY CLAIM IS SUBJECT TO A MANDATORY STAY FOR THE DURATION OF THE SLC INVESTIGATION.

Plaintiffs allege that PENN's directors breached their fiduciary duties by voting to reduce the size of the board following Mr. Naples' retirement.  Compl. ¶¶ 162-69.  But plaintiffs, individual shareholders of PENN, do not have standing to bring this claim on their own behalf. PENN is a Pennsylvania corporation, and—under binding Pennsylvania statutory law—the directors of Pennsylvania corporations owe fiduciary duties only to the corporation itself, not to shareholders individually.  15 Pa. C.S. § 1717 (a "board of directors … and individual directors" owe fiduciary duties "solely to the business corporation and not to any shareholder").  As a result, fiduciary breach claims "may be enforced directly by the corporation or may be enforced by an action in the right of the corporation"—that is, derivatively—but they "may not be enforced directly by a shareholder."  *Id.*; *see also Stilwell Value Partners I, L.P.* v. *Prudential Mut. Holding Co.*, 2007 WL 2345281, at *9-11 (E.D. Pa. Aug. 15, 2007) (the "plain language of the statute precludes a direct suit for breach of fiduciary duty" by a shareholder because there "simply is no duty running from the directors to the shareholders").

Stockholder derivative litigation is tightly governed by Pennsylvania's Business Corporation Law.  *See* 15 Pa. C.S. §§ 1781-84.  If an individual shareholder believes corporate fiduciaries have breached their duties, the shareholder must "first make[] a demand on the corporation or the board of directors requesting that the corporation bring an action" itself.  15 Pa.

C.S. § 1781(a)(1).  As the comments to Section 1781 state, "a plaintiff must always demand the board of directors bring an action and allow the corporation to respond … before the plaintiff may commence a derivative action."  15 Pa. C.S. § 1781 comm. cmt. (2022).  That is because "[d]ecisions regarding litigation by or on behalf of a corporation, including shareholder derivative actions, are business decisions as much as any other financial decisions [and are] within the province of the board of directors."  *Cuker* v. *Mikalauskas*, 547 Pa. 600, 611 (1997).

Section 1783 of the Business Corporation Law goes on to provide that one way a board may respond to a demand is to appoint a special litigation committee to determine whether such litigation shall proceed.[9]  The special litigation committee must be composed of at least two individuals who "are not interested in the claims asserted" and "are capable as a group of objective judgment."  15 Pa. C.S. § 1783(c).  The committee will select independent counsel and conduct an investigation that typically involves collecting relevant documents, interviewing witnesses, and assessing the facts and law relevant to the claims.  *See, e.g.*, *Cuker*, 547 Pa. at 603-06 (describing special litigation committee's investigation).

Where, as here, "the board of directors appoints a special litigation committee and an action is commenced before" the committee reaches its conclusion, "the court *shall* stay discovery for the time reasonably necessary to permit the committee to complete its investigation."  15 Pa. C.S. § 1783(b)(1) (emphasis added).

Following its investigation, the special litigation committee will determine whether the Company should pursue the derivative claim presented by the stockholder.  15 Pa. C.S. § 1783(e).  Should the SLC determine that it is not in the best interests of the Company to pursue the claim, the SLC or the Company must file the SLC's written report with the Court along with a motion to

---

[9] A board may also appoint an SLC "if a derivative action is commenced before demand has been made on the corporation or the board."  15 Pa. C.S. § 1783(a).

dismiss the derivative claim.  15 Pa. C.S. § 1783(f).

Plaintiffs here did not make a demand before commencing this litigation.  Nevertheless, and in accordance with Section 1783(a), PENN's board of directors formed an independent special litigation committee to respond.  The board endowed the SLC with the authority and responsibility to investigate the facts and circumstances surrounding plaintiffs' claim for breach of fiduciary duty and to determine, on behalf of the board, whether the claim should proceed.  Ex. C (Resols. forming SLC).  The SLC is further empowered to hire independent counsel and any other experts or advisors it deems necessary, and all expenses of the SLC are to be paid by the Company.  *Id.*  The resolutions also direct all officers, agents, and employees of the Company to assist the SLC and provide all documents and information it requests.  *Id.*  As authorized by Section 1783(c)(3), the board appointed to the SLC two members who are not directors—Marc Sonnenfeld and Richard Bazelon—independent attorneys deeply experienced with SLC practice.  Ex. D (Resols. appointing SLC members).  The SLC has retained Dilworth Paxson LLP as its counsel, and it is prepared to proceed right away with its investigation.

A stay is appropriate to allow the SLC the time necessary to complete its work.  15 Pa. C.S. § 1783(b)(1); *Lee* v. *McGarry*, 2020 WL 7075633, at *3 (W.D. Pa. Dec. 3, 2020) (noting that court granted SLC's motion to stay); *Allegheny Cnty. Emps.-Ret. Fund* v. *Bertolini*, 2017 WL 11639281, at *1 (Pa. Com. Pl. Aug. 15, 2017) (granting SLC's motion to stay); Hinshaw & Lanciotti, 21 Standard Pennsylvania Practice 2d § 113:65 ("If the board of directors appoints a special litigation committee and an action is commenced before a determination has been made … the court must stay discovery for the time reasonably necessary to permit the committee to complete its investigation[.]").  The mandatory discovery stay in Section 1783(b)(1) recognizes the reality that, without a stay, the SLC and the plaintiffs would engage in dual and duplicative investigation and

discovery, which would undermine the SLC's statutory mandate to consider plaintiffs' claim in the first instance. *See* 15 Pa. C.S. § 1783 comm. cmt. (2022) ("In essence, a special litigation committee is intended to function as a surrogate decision-maker, allowing the corporation to make what is fundamentally a business decision.").

In their complaint, plaintiffs alleged that demand on the board was excused. To excuse demand under Section 1781(b), a stockholder must "make[] a specific showing that immediate and irreparable harm to the business corporation" would result if the stockholder were compelled to make a demand and wait. 15 Pa. C.S. § 1781(b)(1). The purpose of this limited exception is to allow a court an opportunity to entertain an application for "an injunction to preserve the status quo." 15 Pa. C.S. § 1781 comm. cmt. (2022). Here, plaintiffs have made no showing of imminent harm and have not sought a preliminary injunction. In their complaint, they alleged that harm would befall the Company "because the shareholder vote at the upcoming 2025 Annual Meeting will otherwise take place based on materially false, misleading, and incomplete information." Compl. ¶ 109. But plaintiffs have abandoned this argument: They do not seek any relief in advance of the 2025 Annual Meeting. Instead, their motion to expedite seeks a trial in November—five full months after that meeting will have occurred. MTE 5. That plaintiffs have proposed a schedule that contemplates a resolution of this matter six months or more from now and nearly half a year after the 2025 Annual Meeting will have taken place undermines any suggestion that the time spent making a demand would have caused the Company the "immediate and irreparable harm" required to excuse demand under Section 1781(b).

Even if pre-litigation demand were excused, however, plaintiffs are still required under the statute to make a demand on the board "promptly upon commencement of the action." 15 Pa. C.S. § 1781(b)(2). This is because the statute "contemplates that the board would still be given an

appropriate time to respond and that further inquiry by the court will focus on the response of the board *or a special litigation committee* if one is appointed." 15 Pa. C.S. § 1781 comm. cmt. (2022) (emphasis added). Plaintiffs have made no such demand and have failed to comply with Section 1781(b)(2).

A special litigation committee has now been appointed, and thus the mandatory stay contemplated by Section 1783(b)(1) is triggered by this motion. In their motion to expedite, plaintiffs say that "the irreparable harm to shareholders from a tainted electoral process … constitutes sufficient 'good cause' to avoid a stay." MTE 15. Plaintiffs cite nothing in support of this contention. That is unsurprising: Plaintiffs' position—that any showing of alleged irreparable harm arising from alleged breaches of fiduciary duty would justify undermining the ability of an SLC to function—is flatly at odds with Pennsylvania's statutory scheme. Under Section 1783, a special litigation committee acts as "a surrogate decision-maker," and, "[i]f a court determines that the members of the committee met the qualifications required" by the statute, "and that the committee conducted its investigation and made its determination or recommendation in good faith, independently, and with reasonable care, it makes no sense to substitute the court's legal judgment for the business judgment of the committee." 15 Pa. C.S. § 1783 comm. cmt. (2022). In those circumstances, the court is required to "enforce the determination of the committee." 15 Pa. C.S. § 1783(f)(3); *see also Cuker*, 547 Pa. at 611-12 ("Without considering the merits of the action, a court should determine the validity of the board's decision to terminate the litigation; if that decision was made in accordance with the appropriate standards, then the court should dismiss the derivative action prior to litigation on the merits."). In light of that statutorily imposed standard and the lack of any exigency to plaintiffs' claims, there is no good cause to avoid the mandatory stay required under the Business Corporation Law while the SLC completes its work.

## II. THE COURT SHOULD STAY THE REMAINING CLAIMS PURSUANT TO ITS INHERENT POWER TO CONTROL ITS DOCKET.

### A. Plaintiffs' Count IV is duplicative of its fiduciary duty claim and should be stayed.

Plaintiffs' claim asserting a "Violation of Shareholder Voting Rights" (Count IV) should also be stayed pending the completion of the SLC's investigation. Count IV states no independent cause of action; it is duplicative of plaintiffs' breach of fiduciary duty claim (Count V). Counts IV and V rely on the same alleged facts, the same alleged injury, and seek identical relief. *Compare, e.g.*, Compl. ¶ 158 (Count IV: Violation of Shareholder Voting Rights) ("[t]he Board Reduction Scheme … is designed to interfere with … shareholders' right to vote by preventing shareholders from electing all three Independent Nominees at the 2025 Annual Meeting."), *with id.* ¶ 164 (Count V: Breach of Fiduciary Duty) ("the Board Reduction Scheme … was enacted for the primary purpose of interfering with shareholders' ability to effectively exercise their voting rights in a contested election for directors by eliminating a Board seat up for election after Plaintiffs had nominated a candidate to fill that seat"); *compare id.* ¶ 161 (Count IV: Violation of Shareholder Voting Rights) (seeking "declaratory and injunctive relief"), *with id.* ¶ 169 (Count V: Breach of Fiduciary Duty) (seeking "declaratory and injunctive relief"). Counts IV and V each concern the reduction of the size of the board.

Plaintiffs allege in Count IV that the "Board Reduction Scheme is invalid under Pennsylvania law" and cite to the Pennsylvania Business Corporation Law generally, but do not point to a single provision of the Business Corporation Law that any Defendant is alleged to have violated. *See id.* ¶ 158. To the contrary, the Pennsylvania Business Corporation Law and the Company's bylaws authorize the board to change the number of directors on the board without limitation. *See* 15 Pa. C.S. § 1723 ("The number of directors shall be fixed by, or in the manner provided in, the bylaws."); PENN Bylaws Section 4.03(a) (providing that the number of directors

"shall be fixed (and may be changed from time to time) solely by resolution of the board of directors").  Instead, Count IV simply identifies the Court's affirmative power to adjudicate the validity of a "corporate action" under the Business Corporation Law and asks the Court to use its equitable powers to "determine the validity" of the board's decision.  *See* Compl. ¶¶ 153-57; 15 Pa. C.S. § 1793(a).  But the only legal reason plaintiffs identify for the alleged invalidity of the action is that, plaintiffs say, it was the product of a breach of fiduciary duty.  That is a derivative claim, as plaintiffs concede.  *See id.* ¶ 166.  And the Business Corporation Law provides a specific procedure for the adjudication of derivative claims:  The board may appoint a special litigation committee and "the court shall stay discovery for the time reasonably necessary to permit the committee to complete its investigation."  15 Pa. C.S. § 1783(a), (b).

Litigating Count IV while the special litigation committee investigates the same facts and circumstances would intrude on the SLC's ability to conduct its investigation.  Plaintiffs cannot circumvent the SLC's investigative and decision-making mandate under the Pennsylvania Business Corporation Law through parallel and duplicative litigation concerning the exact same facts and circumstances.  Courts recognize that a stay of all claims is appropriate where, as here, a plaintiff also asserts other claims that overlap or relate to the derivative claims being investigated by a special litigation committee.  *See, e.g.*, *Al-Naimi* v. *Kesteron*, No. 5906-VCL, 2011 WL 400099, at *1 (Del. Ch. Feb. 4, 2011) (staying overlapping derivative and other claims because "the SLC's investigation into and determination with respect to the derivative claims may result in a settlement of all claims or otherwise affect the disposition of the [other] claims in the action").

Moreover, principles of judicial economy support a stay of plaintiffs' claims.  It is well settled that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for

counsel, and for litigants." *Cheyney State Coll. Faculty* v. *Hufstedler*, 703 F.2d 732, 737-38 (3d Cir. 1983) (quoting *Landis* v. *N. Am. Co.*, 299 U.S. 248, 254-55 (1936)). Absent a stay of all claims, the "simultaneous discovery of the same persons and materials by two separate sources"— *i.e.*, discovery in the instant action and cooperation with the special litigation committee's independent investigation—would needlessly expend the time, effort, and resources of the Court, the parties, the Company, and counsel. *Abbey* v. *Comput. & Commc'ns Tech. Corp.*, 457 A.2d 368, 375 (Del. Ch. 1983). Allowing the SLC to conduct its investigation and report its findings to the Court will serve to clarify and may also significantly narrow the issues in the case. The SLC will have investigated the same facts and circumstances that form the basis for plaintiffs' Count IV and the SLC's factual and legal findings will undoubtedly affect how and whether plaintiffs' Count IV may proceed. It would be a waste of resources to allow plaintiffs to proceed with discovery on Count IV while the SLC is performing the same work.

Plaintiffs claim that they will be harmed by a stay of the action but they cite nothing in support of that contention. MTE 15. Regardless, allowing the SLC to complete its investigation and report its findings to the Court will not cause undue delay. Plaintiffs have conceded that the case "presents narrow factual issues capable of expedient resolution." MTE 14. The SLC has already retained independent counsel and its work is underway.

### B. Plaintiffs' remaining Counts should be stayed.

Plaintiffs' remaining Counts should be stayed for the reasons stated above. A brief discussion of each follows.

### *Count VI*

Plaintiffs allege that the board violated Section 1724 of the Pennsylvania Business Corporation Law and Article 6(a) of PENN's Second Amended and Restated Articles of

Incorporation (the "Articles"), each of which provide that the classes of the board shall be "as nearly equal in number as possible." *See* Compl. ¶¶ 9, 37, 170-79. But plaintiffs' claim defies basic logic. PENN's board of directors is now comprised of eight directors across three director classes. Eight is not divisible by three. As required by Pennsylvania law, and in accordance with PENN's Articles, PENN's directors are allocated to classes "as nearly equal in number *as possible*" for an eight-member board. 15 Pa. C.S. § 1724(b)(1) (emphasis added); Article 6(a) (emphasis added). There are three Class I directors, two Class II directors, and three Class III directors (3-2-3). *See, e.g.*, Ex. A (PENN Ent. Form 8-K, Apr. 28, 2025). By simple arithmetic, the allocation of eight directors across three classes cannot be any closer to "as nearly equal" than 3-2-3.

The Complaint reveals plaintiffs' true grievance: they dispute the reduction of the board size from nine to eight members. *See* Compl. ¶ 37. Count VI is thus an attempt to tack on a purported violation under Section 1724 that makes no sense under the plain language of the statute in yet another attempt to end-run the Pennsylvania Business Corporation Law's stringent demand requirement for breach of fiduciary duty claims.

### Count III

In Count III, plaintiffs allege that Defendants violated SEC Rule 14a-19 by making alleged material misstatements in PENN's proxy card. *See* Compl. ¶¶ 144-51. Rule 14a-19 sets forth requirements for proxy solicitations in contested elections. It provides that, in a proxy contest (unless certain exemptions apply), the company's proxy card must include (and clearly distinguish between) the slate of opposition candidates and the slate of management-supported candidates. 17 C.F.R. §§ 240.14a-19(e)(1), 240.14a-19(e)(3).

Critically, Rule 14a-19 applies *only* where there is a *contested* director election. *See Universal Proxy*, Sec. Exch. Act Release No. 34-93596, 68 Fed. Reg. 68330, Inv. Co. Act Release No. IC-34419, 2021 WL 5545055 (SEC Nov. 17, 2021). Plaintiffs concede as much. Compl. ¶

146 ("SEC Rule 14a-19 applies where (as here) there is a contested director election."). All of plaintiffs' allegations concerning Defendants' purported violations of Rule 14a-19 therefore rely on the assumption that PENN's upcoming annual shareholder meeting on June 17, 2025 is a contested election.

But unless it was a breach of fiduciary duty for the board to reduce its size, the upcoming election is indisputably *uncontested*. Absent a breach, the Director Defendants took a valid action that resulted in there being two director seats up for election at the upcoming meeting, and PENN and HG Vora have each nominated the same two director candidates for the same two available seats. Thus, absent a breach, the upcoming election is uncontested and Rule 14a-19 does not apply, making it impossible as a matter of law for Defendants to have made any material omissions or misrepresentations concerning the candidates for that election in violation of Rule 14a-19.

### *Counts I and II*

Plaintiffs allege in Counts I and II, that Defendants' April 25, 2025 press release and PENN's proxy statement are materially false and misleading, in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9. Compl. ¶¶ 111-43. Rule 14a-9 prohibits the solicitation of proxies through a communication "that is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9(a).

As shown in Appendix A attached hereto, the information that plaintiffs allege Defendants failed to disclose has in fact been publicly disclosed to PENN shareholders through PENN's SEC filings on Form 8-K and as additional definitive proxy materials on Schedule 14A. *See also* Ex. A (PENN Ent. Form 8-K, Apr. 28, 2025); Ex. E (PENN Ent. Form Def 14A, May 2, 2025 – Supplement); Ex. B (PENN Ent. Form Def 14A, S'holder Letter, May 15, 2025). These filings

are available on PENN's website and the SEC website.  The information is part of the "total mix of information" available to shareholders, and plaintiffs will be unable to demonstrate that any of the challenged statements are materially false or misleading under Rule 14a-9.  *TSC Indus., Inc.* v. *Northway, Inc.*, 426 U.S. 438, 449 (1976); *see also*, *e.g.*, *Savoy* v. *Bos. Priv. Fin. Holdings, Inc.*, 626 F. Supp. 3d 242, 250 (D. Mass. 2022) ("The total mix of information available to a shareholder also includes information outside of the proxy statement where the information is already in the public domain and readily available to shareholders.").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion to Stay.

By: /s/ *Stacey A. Scrivani*
      Stacey A. Scrivani
      Attorney I.D. No. 84275
      111 North Sixth Street
      Reading, PA 19601
      stacey.scrivani@stevenslee.com
      Tel: (610)-478-2086

      Jason P. Rudloff
      Attorney I.D. No. 331263
      1500 Market Street
      East Tower, Suite 1800
      Philadelphia, PA  19102
      jason.rudloff@stevenslee.com
      Tel: (215) 751-2882

      Ryan McLeod *(pro hac vice)*
      Attorney I.D. No. 5038
      51 West 52nd Street
      New York, NY 10019
      RAMcLeod@wlrk.com
      Tel: (212)-403-1175

      Cynthia Fernandez Lumermann *(pro hac vice)*
      Attorney I.D. No. 5071618

51 West 52nd Street
New York, NY 10019
CFernandez@wlrk.com
Tel: (212)-403-1162

*Attorneys for Defendants, Penn Entertainment Inc., Jay Snowden, Vimla Black-Gupta, Anuj Dhanda, David Handler, Marla Kaplowitz, Jane Scaccetti, Barbara Shattuck Kohn, Ronald Naples, and Saul Reibstein*

**APPENDIX A**

| Plaintiff's Allegations | Where disclosed by PENN | How disclosed (non-exhaustive) |
|---|---|---|
| The Press Release and Proxy each "creates the false impression that Defendants' decision to nominate two of the Independent Nominees for election at the 2025 Annual Meeting was the product of an agreement when it was not, especially because Defendants refused to name Clifford in their proxy materials[.]" Compl. ¶¶ 115(a), 133(a); *see also* Comp. ¶¶ 11, 91. | Ex. A (PENN Ent. Form 8-K, Apr. 28, 2025 – Ex. 99.1, Press Release) | "While we were unable to reach an agreement with HG Vora, we thank them for their input and look forward to continued engagement with all of our shareholders." |
| | Ex. A (PENN Ent. Form 8-K, Apr. 28, 2025 – Ex. 99.3, Supplemental Information Regarding Engagement with HG Vora Capital Management, LLC) | "On January 29, 2025, the Company received notice … of HG Vora's intent to nominate three director candidates to stand for election … William Clifford, Johnny Hartnett, and Carlos Ruisanchez (the 'HG Vora Nominees')." |
| | Ex. A (PENN Ent. Form 8-K, Apr. 28, 2025 – Ex. 99.2, S'holder Letter) | "It is important to note that we made several attempts to reach a mutually agreeable and reasonable resolution with HG Vora … In fact, the Board offered to appoint Mr. Hartnett and Mr. Ruisanchez to the Board, effective immediately, as part of a settlement offer to HG Vora. We were disappointed that these offers were rejected." |
| | Ex. B (PENN Ent. Form Def 14A, S'holder Letter, May 15, 2025) | "We offered HG Vora several reasonable proposals to reach a mutually agreeable resolution, and as noted above, ultimately determined that Mr. Hartnett and Mr. Ruisanchez would be value-additive to the Board. However, HG Vora quickly rejected every one of our proposals and never offered up a counter-proposal other than the appointment of all three of its nominees or a settlement involving the appointment of two of its nominees in addition to impermissible commitments around governance and strategic changes." |

| | | |
|---|---|---|
| The Proxy and Press Release each "creates genuine confusion among the Company's shareholders concerning how many Board seats actually exist and how many seats are properly up for election at the 2025 Annual Meeting[.]"  Compl. ¶¶ 115(b), 133(b). | Ex. A (PENN Ent. Form 8-K, Apr. 28, 2025) | "[O]n April 25, 2025, the Board (i) decreased the size of the Board from nine to eight members, (ii) decreased the number of Class II directors from three to two[.]" |
| | Ex. A (PENN Ent. Form 8-K, Apr. 28, 2025 – Ex. 99.1) | "The Board now comprises eight directors, seven of whom are independent." <br><br>"[T]he Board intends to nominate Mr. Hartnett and Mr. Ruisanchez to fill the *two Class II director seats available for election at the Annual Meeting*."  (emphasis added) |
| | Ex. A (PENN Ent. Form 8-K, Apr. 28, 2025 – Ex. 99.2) | "Following these two appointments, the Board will comprise of eight members, five of whom will have been added to the Board in the last five years." |
| | Ex. B (PENN Ent. Form Def 14A, S'holder Letter, May 15, 2025) | "Given these actions, we believe HG Vora is intent on ensuring all three of its candidates are appointed to the Board … despite only two seats being available for election at this year's Annual Meeting[.]" |
| The Proxy and Press Release each "omits that the reduction in seats resulted from intentional Board action, rather than occurring automatically upon the resignation of a director as … suggest[ed][.]"  Compl. ¶¶ 115(c), 133(c); *see also* Compl. ¶¶ 83, 92, 96. | Ex. A (PENN Ent. Form 8-K, Apr. 28, 2025) | "[O]n April 25, 2025, the Board (i) decreased the size of the Board from nine to eight members, (ii) decreased the number of Class II directors from three to two[.]" |
| | Ex. B (PENN Ent. Form Def 14A, S'holder Letter, May 15, 2025) | "[W]e [the board] determined that it is in the best interest of the Company, all shareholders and other constituents to nominate Messrs. Hartnett and Ruisanchez for election to the Board while, in the absence of a fitting third candidate, reducing the Board size to eliminate the vacancy created by the retirement of Ron Naples." |
| The Press Release "omits disclosing the reason for the Board Reduction Scheme, including whether such reduction is intended to be temporary."  Compl. ¶¶ 115(d); *see also* Compl. ¶¶ 11, 83, 94, 133(d). | Ex. B (PENN Ent. Form Def 14A, S'holder Letter, May 15, 2025) | "We have vetted HG Vora's third nominee more than once in the past five years, including in 2020 when there was no actual, threatened or purported proxy contest. At that time, we concluded that Mr. Clifford was unsuited to serve on the Board because he did not possess the experience, skills or other characteristics necessary to make a |

| | | positive contribution to the Board or the Company. Five years later, our conclusion regarding Mr. Clifford remains the same. As a result, we determined that it is in the best interest of the Company, all shareholders and other constituents to nominate Messrs. Hartnett and Ruisanchez for election to the Board while, in the absence of a fitting third candidate, reducing the Board size to eliminate the vacancy created by the retirement of Ron Naples." |
|---|---|---|
| The Press Release "did not state that Defendants had not accepted HG Vora's third nominee, Clifford." Compl. ¶ 11; *see also* Compl. ¶ 83. | Ex. A (PENN Ent. Form 8-K, Apr. 28, 2025 – Ex. 99.3) | "On January 29, 2025, the Company received notice … of HG Vora's intent to nominate three director candidates to stand for election … William Clifford, Johnny Hartnett, and Carlos Ruisanchez (the 'HG Vora Nominees')." |
| | | "On April 24, 2025, representatives of the Company's financial advisors held a call with HG Vora's outside advisor and communicated that the Company would be willing to immediately appoint Johnny Hartnett and Carlos Ruisanchez to serve as directors of the Company based on their respective relevant qualifications and experience as part of a settlement." |
| | | "On April 25, 2025, HG Vora's outside advisor communicated to representatives of the Company's financial advisors that HG Vora had rejected this latest proposal as the basis for a potential resolution. Later that day, the Company publicly announced that … the Company intended to nominate Johnny Hartnett and Carlos Ruisanchez for election to the Board." |
| | Ex. B (PENN Ent. Form Def 14A, S'holder Letter, May 15, 2025) | "We have vetted HG Vora's third nominee more than once in the past five years, including in 2020 when there was no actual, threatened or purported proxy contest. At that time, we concluded that Mr. Clifford was unsuited to serve on the Board because he did not possess the experience, skills or |

| | | other characteristics necessary to make a positive contribution to the Board or the Company. Five years later, our conclusion regarding Mr. Clifford remains the same. As a result, we determined that it is in the best interest of the Company, all shareholders and other constituents to nominate Messrs. Hartnett and Ruisanchez for election to the Board while, in the absence of a fitting third candidate, reducing the Board size to eliminate the vacancy created by the retirement of Ron Naples." |
|---|---|---|
| | Ex. E (PENN Ent. Form Def 14A, Supplement, May 2, 2025) | "The two candidates whom the Company's Board of Directors has nominated for election at the Annual Meeting, Messrs. Johnny Hartnett and Carlos Ruisanchez, were originally recommended for nomination by HG Vora Special Opportunities Master Fund, Ltd." |
| "[T]he Definitive Proxy does not mention that Hartnett and Ruisanchez were first proposed as candidates by HG Vora. By omitting reference to HG Vora, this statement creates the materially misleading impression that no dispute exists between the Company and HG Vora." Compl. ¶ 98.<br><br>The Press Release "did not disclose that the nominees, in fact, had been originally nominated by HG Vora." Compl. ¶ 11. | Ex. A (PENN Ent. Form 8-K, Apr. 28, 2025 – Ex. 99.3) | "On January 29, 2025, the Company received notice … of HG Vora's intent to nominate three director candidates to stand for election … William Clifford, Johnny Hartnett, and Carlos Ruisanchez (the 'HG Vora Nominees')." |
| | Ex. E (PENN Ent. Form Def 14A, Supplement, May 2, 2025) | "The two candidates whom the Company's Board of Directors has nominated for election at the Annual Meeting, Messrs. Johnny Hartnett and Carlos Ruisanchez, were originally recommended for nomination by HG Vora Special Opportunities Master Fund, Ltd." |
| "[T]he Supplemental Proxy omits the fact that HG Vora had nominated *three* individuals." Compl. ¶ 106. | Ex. A (PENN Ent. Form 8-K, Apr. 28, 2025 – Ex. 99.3) | "On January 29, 2025, the Company received notice … of HG Vora's intent to nominate three director candidates to stand for election … William Clifford, Johnny Hartnett, and Carlos Ruisanchez (the 'HG Vora Nominees')." |

| | | "During such conversations HG Vora's outside advisor indicated that a settlement with HG Vora would need to involve either the appointment of *all three director candidates nominated by HG Vora* or the appointment of two director candidates nominated by HG Vora plus additional commitments …" (emphasis added) |
|---|---|---|
| The Press Release did not "disclose whether the Board voted to eliminate the ninth Board seat." Compl. ¶ 83. | Ex. A (PENN Ent. Form 8-K, Apr. 28, 2025) | "[O]n April 25, 2025, the Board (i) decreased the size of the Board from nine to eight members, (ii) decreased the number of Class II directors from three to two[.]" |
| | Ex. B (PENN Ent. Form Def 14A, S'holder Letter, May 15, 2025) | "As a result, we determined that it is in the best interest of the Company, all shareholders and other constituents to nominate Messrs. Hartnett and Ruisanchez for election to the Board while … reducing the Board size to eliminate the vacancy created by the retirement of Ron Naples." |