**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HG VORA CAPITAL MANAGEMENT, LLC, HG VORA SPECIAL OPPORTUNITIES MASTER FUND, LTD., and DOWNRIVER SERIES LP – SEGREGATED PORTFOLIO C, on behalf of themselves and derivatively on behalf of PENN ENTERTAINMENT, INC., | Case No.: 5:25-cv-02313-CH |
| Plaintiffs, | |
| -against- | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' AMENDED MOTION TO DISMISS** |
| PENN ENTERTAINMENT, INC., JAY SNOWDEN, VIMLA BLACK-GUPTA, ANUJ DHANDA, DAVID HANDLER, MARLA KAPLOWITZ, JANE SCACCETTI, BARBARA SHATTUCK KOHN, RONALD NAPLES, and SAUL REIBSTEIN, | |
| Defendants, -and- | |
| PENN ENTERTAINMENT, INC., | |
| Nominal Defendant. | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' AMENDED MOTION TO DISMISS**</u>

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................ - 1 -

BACKGROUND .............................................................................................. - 2 -

ARGUMENT ................................................................................................... - 7 -

I.   Plaintiff's Federal Securities Causes of Action (Counts I and II) Fail to State a
     Cognizable Claim............................................................................................ - 8 -

     A.  Plaintiff does not plead any material misstatement or omission in the Proxy
         Statement or proxy card in violation of SEC Rule 14a-9 (Count I).......................... - 9 -

     B.  Plaintiff fails to plead any violation of SEC Rule 14a-19 in Count II. ................... - 14 -

II.  Plaintiff's State-Law Causes of Action (Counts III and V) Should Be Dismissed
     for Lack of Subject Matter Jurisdiction. ....................................................... - 18 -

III. Plaintiff's Non-Stayed State-Law Causes of Action (Counts III and V) Should Be
     Dismissed Because They Fail to State Any Claim. ........................................... - 19 -

     A.  "Violation of Shareholder Voting Rights" is not a cognizable claim under
         Pennsylvania law. .................................................................................... - 19 -

     B.  The eight directors on PENN's board are already divided into classes "as
         nearly equal in number as possible." ........................................................ - 22 -

IV.  All Discovery Is Stayed Pending Resolution of This Motion...................................... - 23 -

CONCLUSION...................................................................................................... - 24 -

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ash* v. *GAF Corp.*,
    723 F.2d 1090 (3d Cir. 1983)..........................................................................................12, 13

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009)...........................................................................................................7

*Avery* v. *Mitchell*,
    1999 WL 240339 (E.D. Pa. Apr. 20, 1999) ................................................................. 19-20

*Bell Atl. Corp.* v. *Twombly*,
    550 U.S. 544 (2007)...........................................................................................................7

*Cal. Pub. Emps.' Ret. Sys.* v. *Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004)...........................................................................................8 n.4

*City of Riviera Beach Gen. Emps. Ret. Sys.* v. *Mylan N.V.*,
    2016 WL 4367549 (W.D. Pa. May 10, 2016)........................................................................22

*Colville* v. *Allegheny Co.*,
    926 A.2d 424 (Pa. 2007) ...................................................................................................23

*Dipple* v. *Odell*,
    870 F. Supp. 2d 386 (E.D. Pa. 2012) ..................................................................................23

*Elkadrawy* v. *Vanguard Group, Inc.*,
    584 F.3d 169 (3d Cir. 2009)..............................................................................................19

*EMAK Worldwide, Inc.* v. *Kurz*,
    50 A.3d 429 (Del. 2012) ..................................................................................................21

*Fowler* v. *UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009).......................................................................................... 7-8

*Gundlach* v. *Swain*,
    1996 WL 24748 (E.D. Pa. Jan. 24, 1996), *aff'd*, 91 F.3d 123 (3d Cir. 1996) .......................19

*Hornung* v. *Schauseil Ins. Assocs., Inc.*,
    619 A.2d 775 (Pa. Super. 1993)........................................................................................19

*High River Ltd. P'ship* v. *Mylan Labs., Inc.*,
    383 F. Supp. 2d 660 (M.D. Pa. 2005)..................................................................................19

*IBS Fin. Corp.* v. *Seidman & Assocs., L.L.C.*,
    136 F.3d 940 (3d Cir. 1998)..................................................................................21

*In re Discovery Labs. Sec. Litig.*,
    2006 WL 3227767 (E.D. Pa. Nov. 1, 2006) ........................................................10

*In re NAHC, Inc. Sec. Litig.*,
    306 F.3d 1314 (3d Cir. 2002)..............................................................................10

*In re Ocugen, Inc. Sec. Litig.*,
    659 F. Supp. 3d 572 (E.D. Pa. Mar. 3, 2023 ....................................................2 n.1

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
    311 F.3d 198 (3d Cir. 2002)...................................................................................8

*In re Urban Outfitters, Inc. Sec. Litig.*,
    103 F. Supp. 3d 635 (E.D. Pa. 2015) ..................................................................10

*Jaroslawicz* v. *M&T Bank Corp.*,
    2024 WL 474846 (D. Del. Feb. 7, 2024),
    *reconsideration denied*, 2024 WL 2975766 (D. Del. June 13, 2024) ....................13

*Lewis* v. *Chrysler Corp.*,
    949 F.2d 644 (3d Cir. 1991)...................................................................................8

*McCabe* v. *Ernst & Young, LLP*,
    494 F.3d 418 (3d Cir. 2007)................................................................................13

*McRitchie* v. *Zuckerberg*,
    315 A.3d 518 (Del. Ch. 2024)..............................................................................22

*MM Cos., Inc.* v. *Liquid Audio, Inc.*,
    813 A.2d 1118 (Del. 2003) ..................................................................................21

*Pell* v. *Kill*,
    135 A.3d 764 (Del. Ch. 2016)..............................................................................21

*Phillips* v. *Cnty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008)...................................................................................7

*Reifsnyder* v. *Pittsburgh Outdoor Advert. Co.*,
    405 Pa. 142 (1961) .........................................................................................20-21

*Schmidt* v. *Skolas*,
    770 F.3d 241 (3d Cir. 2014)...............................................................................3 n.1

*SG Cowen Sec. Corp.* v. *U.S. Dist. Ct. for the N. Dist. of Cal.*,
    189 F.3d 909 (9th Cir. 1999) ..............................................................................24

*Spina* v. *Refrigeration, Serv. & Eng'g, Inc.*,
 2014 WL 4996200 (E.D. Pa. 2014) ..........................................................24

*Stilwell Value P'rs I, LP* v. *Prudential Mut. Holding Co.*,
 2007 WL 2345281 (E.D. Pa. Aug. 15, 2007) .........................................22

*Sturgeon* v. *Pharmerica Corp.*,
 438 F. Supp. 3d 246 (E.D. Pa. 2020) ................................................3 n.1

*Tracinda Corp.* v. *DaimlerChrysler AG*,
 502 F.3d 212 (3d Cir. 2007) ..................................................................9

*TSC Indus., Inc.* v. *Northway, Inc.*,
 426 U.S. 438 (1976) ....................................................................10, 12

*United Food & Com. Workers Union Local 880 Pension Fund* v. *Chesapeake
 Energy Corp.*,
 774 F.3d 1229 (10th Cir. 2014) ............................................................12

*United Paperworks Int'l. Union* v. *Int'l Paper Co.*,
 985 F.2d 1190 (2d Cir. 1993) ................................................................12

*Vejseli* v. *Duffy*,
 2025 WL 1452842 (Del. Ch. May 21, 2025) .......................................21

*Warehime* v. *Warehime*,
 777 A.2d 469 (Pa. Super. Ct. 2001) ...................................................21

*Warehime* v. *Warehime*,
 860 A.2d 41, 48 (Pa. 2004) ................................................................21

**Statutes and Rules**

17 C.F.R. § 240.14a-19 .................................................................. *passim*

17 C.F.R. § 240.14a-9 .................................................................... *passim*

17 C.F.R. § 240.14a-101 ...................................................................9 n.5

1 Pa. C.S. § 1903 ...............................................................................23

1 Pa. C.S. § 1921 ...............................................................................23

15 Pa. C.S. § 1717 .................................................................... 20-21, 22

15 Pa. C.S. § 1723 ...............................................................................20

15 Pa. C.S. § 1724 .........................................................................22, 23

15 Pa. C.S. § 1725 ..........................................................................................................3

15 Pa. C.S. § 1755 ..........................................................................................................3

15 Pa. C.S. § 1793 ........................................................................................................19

15 U.S.C. § 78u-4 ...........................................................................................8, 13, 23

15 U.S.C. § 78n ...............................................................................................................8

28 U.S.C. § 1367 .....................................................................................................18-19

Pa. R. Civ. P. 1019(g) ...............................................................................................2 n.1

Fed. R. Civ. P. 9(b) .................................................................................8, 8 n.4, 9

Fed. R. Civ. P. 12(b)(6) ..........................................................................7, 9, 19

## PRELIMINARY STATEMENT

For the past two years, Plaintiff hedge fund HG Vora has waged an activist campaign against PENN Entertainment, Inc. ("PENN" or the "Company") and its board of directors. This litigation adds this Court to that campaign. Earlier this year, HG Vora threatened to run a proxy fight to elect three new directors to PENN's board to fill the three seats that were expected to be up for election at this year's annual meeting. Hoping to avoid a distracting and expensive contest, PENN attempted to reach an agreement with HG Vora, but HG Vora turned down PENN's offers. Faced with the prospect of a protracted proxy fight, two of PENN's incumbent directors decided not to run for reelection, and a third director retired from the board immediately. PENN's directors resolved to nominate two of the individuals proposed by HG Vora to replace the directors who declined to run and to exercise their authority under the Company's bylaws to eliminate the vacancy resulting from the retirement. At the annual meeting, held on June 17, 2025, PENN's stockholders elected the two candidates nominated by both HG Vora and PENN.

In this lawsuit, HG Vora alleges that PENN violated federal securities laws by omitting information from its proxy disclosures and that PENN's directors violated state law by eliminating the vacancy created by the retirement. At the center of the complaint is its allegation that the directors breached their fiduciary duties when they reduced the size of the board, but that claim is derivative, is under review by a special litigation committee, and has been stayed. The remainder of HG Vora's claims are without merit and should be dismissed.

HG Vora contends that PENN's definitive proxy statement and proxy card are "false and misleading" because they purportedly did not contain certain information required to be included under SEC rules that apply to contested elections. ¶¶ 97, 135, 138-39, 150. But PENN's 2025 Annual Meeting was not a contested election: PENN and HG Vora solicited proxies for the same two candidates to fill the only two available board seats. Even if Item 7(f) and Rule 14a-19 did apply, Plaintiff has in any event failed to plead every element of a claim under Section 14(a). PENN made extensive disclosures in advance of the annual meeting that left no doubt that PENN and HG Vora were soliciting proxies for the same two nominees. And Plaintiff has not pleaded a

cognizable loss or transactional causation.  Nor can HG Vora make out a valid claim by criticizing PENN for not including a third name on its proxy card.  SEC guidance makes clear that PENN was not required to include Mr. Clifford on its proxy card after the board determined that his nomination was improper under PENN's bylaws.

Because the federal securities claims fail, there is no basis for subject matter jurisdiction over the state-law claims, and they should be dismissed for that reason alone.  They are also meritless.  Count III asserts a cause of action that does not exist under Pennsylvania law and Count V is frivolous on its face.  In Count III, HG Vora seeks to invalidate the board's decision to reduce its size, but HG Vora never identifies the basis for the alleged invalidity.  There is none. As the complaint itself concedes, "boards are permitted to adjust their own size," and there is no dispute that PENN's board had the authority to do so here under the Company's bylaws and the Pennsylvania Business Corporation Law.  ¶¶ 12, 88.  Instead, HG Vora concocts a purported common law cause of action for "violation of shareholder voting rights" that does not exist under Pennsylvania law.  ¶¶ 157-67.  In Count V, HG Vora says PENN's new board size violates a statutory requirement that board classes be "as nearly equal in number as possible" because one class has two seats while the other two each have three.  ¶¶ 178-83.  Nowhere, however, does HG Vora explain what system of mathematics would allow an eight-member board with three classes to have class sizes that are any closer to "as nearly equal in number as possible" than what PENN has done.

HG Vora's complaint fails to plead any claim upon which relief may be granted.  It should be dismissed.

## BACKGROUND

PENN is a Pennsylvania corporation headquartered in Berks County.  ¶¶ 4-5, 21, 42.[1]  It operates a diverse portfolio of brick-and-mortar casinos, racetracks, and resorts across North

---

[1] Citations in the form "¶ _" refer to the paragraphs of the Verified First Amended Complaint in this action, dated August 18, 2025.  Citations in the form "Compl. Ex. _" refer to exhibits attached to the Verified First Amended Complaint.  Citations in the form "Ex. _" refer to exhibits attached hereto in accordance with Pennsylvania Rule of Civil Procedure 1019(g) ("Any part of a pleading may be incorporated by reference in another part of the same pleading or in another pleading in the same action."), and common law principles allowing the court, on a motion to dismiss, to "take judicial notice of matters of public record, such as SEC filings."  *See In re Ocugen, Inc. Sec. Litig.*,

America along with an increasingly strong digital and online gaming presence.  ¶¶ 4-5, 42.  The Company's stock is publicly traded on the NASDAQ exchange.  ¶ 21.

PENN is led by an eight-member board of directors divided into three staggered classes, with each class serving three-year terms.  ¶¶ 22-30, 39.  Section 4.03(a) of PENN's bylaws provides that the size of the board, and the size of each class, "shall be fixed (and may be changed from time to time) solely by resolution of the board of directors."  *See* Ex. A (PENN Bylaws, Section 4.03(a)).  PENN holds annual meetings where shareholders vote on the class of directors up for election or reelection that year, as required by the Pennsylvania Business Corporation Law ("BCL").  ¶¶ 35, 37, 39.  *See also* 15 Pa. C.S. §§ 1725, 1755.  As a casino operator, PENN's business is regulated by the state gaming authorities in each of the jurisdictions in which it operates.  ¶ 59.  Among other obligations, certain states require gaming licenses not only for the operator itself but also for shareholders of an operator who acquire a significant voting stake— typically 5% or more.  *Id.*

Plaintiffs are various entities that form part of HG Vora Capital Management, LLC (collectively, "Plaintiff" or "HG Vora"), an activist investor based in New York City.  ¶¶ 18-20. In 2024, various state gaming authorities, including the Massachusetts Gaming Commission, instructed HG Vora that in order to nominate any candidates to serve as directors on PENN's board, HG Vora was required to be licensed.  ¶ 60.  Instead of complying with this instruction to complete a licensing process, HG Vora "restructure[d] its investment so that it did not need a license in Massachusetts in order to nominate candidates for election" to PENN's board.  ¶ 63.  It announced that restructuring in a Schedule 13D amendment filed with the SEC in January 2025, disclosing that it had reduced its stockholdings in PENN to 4.8% while retaining its economic exposure to PENN stock through derivative instruments.  ¶ 64.

---

659 F. Supp. 3d 572, 587 (E.D. Pa. 2023) (citing *Schmidt* v. *Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)); *Sturgeon* v. *Pharmerica Corp.*, 438 F. Supp. 3d 246, 257 (E.D. Pa. 2020) ("Courts will, however, take judicial notice of certain matters of public record on a motion to dismiss; examples of matters of public record include 'Securities and Exchange Commission filings . . . .'").

Shortly thereafter, Plaintiff announced its intention to nominate three candidates—Johnny Hartnett, Carlos Ruisanchez, and William Clifford—for election at PENN's 2025 annual meeting (the "Annual Meeting"). ¶¶ 1, 65. Mr. Hartnett is the former CEO of Superbet Betting & Gaming S.A., a technology and entertainment company. ¶ 69. Mr. Ruisanchez is the founding partner of hospitality and real estate investment companies Sorelle Capital and Sorelle Hospitality and previously served as CFO of a gaming and entertainment company. ¶ 70. Mr. Clifford is the former CFO of PENN, when it was operating under the name PENN National Gaming. ¶ 68. Following receipt of Plaintiff's nomination notice, PENN advised HG Vora of certain deficiencies, which HG Vora subsequently corrected. ¶¶ 72-74. During the first half of March 2025, the Company interviewed each of Plaintiffs' nominees. ¶ 75. One of the candidates, Mr. Clifford, had been evaluated by PENN nearly five years earlier, and the board at that time had determined that "Mr. Clifford was unsuited to serve on the Board because he did not possess the experience, skills or other characteristics necessary to make a positive contribution to the Board or the Company." *See* Ex. F at 9 (PENN Ent. Form Def 14A, S'holder Letter, May 15, 2025). PENN nevertheless evaluated his candidacy and interviewed him again in 2025 alongside Mr. Hartnett and Mr. Ruisanchez.

On March 25, 2025, representatives of HG Vora and PENN met to discuss the nominations, and PENN advised HG Vora that it wished to reach a resolution that would avoid a proxy fight. ¶ 75. PENN offered to add Mr. Hartnett to the board. *Id.* HG Vora declined the offer. ¶ 76. On April 3, PENN made a new offer in which it would agree to add Mr. Hartnett to the board and allow HG Vora to have input into the process of finding a second new director, for which position Mr. Ruisanchez would be shortlisted. ¶ 78. HG Vora declined that offer too. ¶ 79.

In mid-April, a regulator prohibited HG Vora "from making certain demands on the Company." *Id.* Plaintiff thereafter advised PENN that PENN would have to initiate further settlement discussions in light of the regulatory action. ¶ 80. On April 24, PENN made a further revised settlement proposal, this time offering to seat both Mr. Hartnett and Mr. Ruisanchez immediately. ¶ 82. HG Vora rejected that proposal the next day. ¶ 83.

PENN's board met after HG Vora conveyed this news. Two directors whose seats were up for election at the Annual Meeting—Barbara Shattuck Kohn and Saul Reibstein—announced that they did not wish to run in a contested election, and the third director who would have been up for reelection—Ronald Naples—tendered his resignation, effective immediately. *See* ¶ 86; Ex. B at 6 (PENN Ent. Form 8-K, Apr. 28, 2025 – Ex. 99.1, Press Release). The board voted to nominate Mr. Hartnett and Mr. Ruisanchez for the two seats held by Ms. Kohn and Mr. Reibstein and to eliminate the vacancy created by Mr. Naples' retirement by decreasing the size of the board from nine to eight members. ¶¶ 2, 86-87.

The board informed shareholders of its decision in a press release issued that day, Friday, April 25, 2025 (the "Press Release"). ¶ 86. The Press Release "stated that there would be 'two Class II director seats available for election at the Annual Meeting,' instead of three, and that 'the Board intends to nominate Mr. Hartnett and Mr. Ruisanchez to fill the two Class II director seats available for election at the Annual Meeting.'" ¶ 87.

On Monday, April 28, 2025, the Company filed its definitive proxy (the "Proxy Statement") with the SEC, listing Mr. Hartnett and Mr. Ruisanchez as the Company's nominees for the Annual Meeting. *See* ¶¶ 94-95. *See also* Compl. Ex. B (PENN Ent. Form Def 14A, Definitive Proxy Statement, Apr. 28, 2025). The Company also filed that same day an 8-K disclosing additional relevant information and explaining that "[i]n connection with Mr. Naples' resignation from the Board and Ms. Kohn's and Mr. Reibstein's respective decision not to stand for reelection, on April 25, 2025, the Board (i) decreased the size of the Board from nine to eight members, [and] (ii) decreased the number of Class II directors from three to two." *See* Ex. B at 3 (PENN Ent. Form 8-K, Apr. 28, 2025). The 8-K made clear that "[t]he Board now comprises eight directors," and "the Board intends to nominate Mr. Hartnett and Mr. Ruisanchez to fill the two Class II director seats available for election at the Annual Meeting." *Id.* at 6 (Ex. 99.1, Press Release).

The Company made additional disclosures concerning the nominees and the Annual Meeting in supplements to the Proxy Statement on various dates thereafter, including May 2, May

15, May 19, May 27, May 29, and June 9, 2025. *See*, *e.g.*, Ex. C at 3 (PENN Ent. Form Def 14A, Supplement, May 2, 2025) ("The two candidates whom the Company's Board of Directors has nominated for election at the Annual Meeting, Messrs. Johnny Hartnett and Carlos Ruisanchez, were originally recommended for nomination by HG Vora Special Opportunities Master Fund, Ltd."); Ex. F at 9 (PENN Ent. Form Def 14A, S'holder Letter, May 15, 2025) ("We have vetted HG Vora's third nominee more than once in the past five years . . . [and] concluded that Mr. Clifford was unsuited to serve on the Board . . . . As a result, we determined that it is in the best interest of the Company, all shareholders and other constituents to nominate Messrs. Hartnett and Ruisanchez for election to the Board while . . . reducing the Board size to eliminate the vacancy created by the retirement of Ron Naples."); Ex. G at 3 (PENN Ent. Form Def 14A, May 19, 2025) ("At the Annual Meeting, shareholders will have the right to elect two candidates to the Board— Johnny Hartnett and Carlos Ruisanchez—both of whom were initially proposed by HG Vora Capital Management, LLC ('HG Vora'). HG Vora is also soliciting proxies for a third director candidate, despite the fact there are only two director seats up for election.").[2]

On May 7, Plaintiff filed the instant action, naming as defendants the then-current members of the PENN board and Mr. Naples (collectively, the "Director Defendants") and the Company as nominal defendant (together with the Director Defendants, "Defendants"). Verified Compl., Dkt. 1, at ¶¶ 21-30; *see also* ¶¶ 21-30. Among other things, the initial complaint sought as relief an order "to allow shareholders an opportunity to elect all three" of HG Vora's nominees "at the 2025 Annual Meeting." *See* Verified Compl., Dkt. 1, at p. 42.

On May 12, 2025, Plaintiff filed its own definitive proxy statement purporting to solicit votes for Mr. Hartnett, Mr. Ruisanchez, *and* Mr. Clifford—even though there were only two seats up for election. ¶ 102. Plaintiff's proxy card stated that its proposal to elect Mr. Clifford would

---

[2] *See also* Ex. I at 3 (PENN Ent. Form Def 14A, Press Release – Glass Lewis Report, June 9, 2025) ("As we communicated to shareholders on May 19, 2025, we made the decision not to solicit proxies for the PENN White Card over the HG Vora Gold Card given that votes for Messrs. Hartnett and Ruisanchez on either card will be counted at the Annual Meeting."); Ex. J at 3 (PENN Ent. Form Def 14A, Press Release – ISS Report, June 9, 2025) ("[T]wo director seats are up for election at the 2025 Annual Meeting and . . . PENN and HG Vora have nominated and are recommending the same two highly-qualified candidates—Johnny Hartnett and Carlos Ruisanchez.").

"only be voted by the proxy holder if there are three (3) director seats are [sic] up for election," ¶ 102, and further instructed shareholders that "[i]f there are two (2) director seats up for election, this proxy will only be voted with respect to HG Vora's nominees Johnny Hartnett and Carlos Ruisanchez and will not be voted with respect to HG Vora nominee William Clifford." *See* Ex. E at 16, 25, 42 (PENN Ent. Form Def 14A, HG Vora Definitive Proxy Statement, May 12, 2025[3]).

Despite its pleaded request for relief at the annual meeting, Plaintiff never sought preliminary injunctive relief or any other relief in advance of it, and the meeting took place as scheduled on June 17, 2025. There, PENN's stockholders elected Mr. Hartnett and Mr. Ruisanchez to fill the two open seats. Consistent with the instructions on Plaintiff's own proxy card, the Company instructed the election inspector to certify the "FOR" votes cast for Mr. Hartnett and Mr. Ruisanchez only, as there were only two board seats up for election. ¶ 117.

After filing the initial complaint, Plaintiff moved for expedition, and Defendants moved to stay proceedings pending review by a special litigation committee appointed by PENN's board. On July 7, 2025, the Court denied Plaintiff's motion and granted Defendants' motion in part, staying proceedings as to Count V of the complaint. Dkt. 28. Defendants moved to dismiss the remaining counts on July 28, 2025, and Plaintiff subsequently amended the complaint. This motion addresses the amended complaint filed on August 18, 2025 (the "Amended Complaint").

## ARGUMENT

In deciding a motion under Rule 12(b)(6), the Court considers whether the complaint contains sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). Although the Court must accept as true a complaint's well-pleaded allegations of fact, *Phillips* v. *Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), it need not accept a plaintiff's bald assertions or legal conclusions, *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678-79 (2009). As the Third Circuit has made clear, "bare-bones" allegations are insufficient,

---

[3] *Available at* https://www.sec.gov/Archives/edgar/data/921738/000121465925007411/j512250defc14a.htm.

because "a complaint must do more than allege the plaintiff's entitlement to relief;" it must "'show' such an entitlement with its facts." *Fowler* v. *UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

## I.    Plaintiff's Federal Securities Causes of Action (Counts I and II) Fail to State a Cognizable Claim.

Count I alleges that PENN's April 28, 2025 Proxy Statement and the proxy card appended thereto (the "Proxy Materials") were materially false and misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9.  ¶¶ 130-48.  *See also* 15 U.S.C. § 78n(a).  Count II further alleges that PENN's proxy card violated Section 14(a) of the Exchange Act and SEC Rule 14a-19—which applies only in contested director elections—by not including Mr. Clifford or distinguishing between PENN's nominees (Mr. Hartnett and Mr. Ruisanchez) and Plaintiff's nominees (Hartnett and Ruisanchez).  ¶¶ 149-56.

When a securities claim sounds in fraud—as Counts I and II do[4]—courts apply a heightened pleading standard under Rule 9(b).  *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).  Rule 9(b) mandates that in order to state a viable securities fraud claim pursuant to Rule 14a-9, a plaintiff must "state with particularity exactly how the proxy materials were false and misleading."  *Lewis* v. *Chrysler Corp.*, 949 F.2d 644, 653 (3d Cir. 1991).  "In addition to Rule 9(b), plaintiffs alleging securities fraud must also comply with the heightened pleading requirements of the [Private Securities Litigation Reform Act of 1995 ("PSLRA")]."  *In re Rockefeller*, 311 F.3d at 217.  Section 78u-4(b)(1) of the PSLRA requires plaintiffs alleging securities fraud to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1); *see also In re Rockefeller*, 311 F.3d at 218.

---

[4] Plaintiff alleges that Defendants were "*at least* negligent" in authorizing the Definitive Proxy.  *See* ¶ 141 (emphasis added).  It further claims that Defendants "prepared, reviewed, approved, disseminated, and/or caused PENN to disseminate the Definitive Proxy which contained materially false and misleading statements and material omissions" and that the "Company's proxy card omission of Clifford is an essential link in achieving Defendants' desired electoral outcome." ¶¶ 136, 151.  The substance of the allegations, and not the label plaintiffs place on them, determines whether Rule 9(b) applies.  *See Cal. Pub. Emps.' Ret. Sys.* v. *Chubb Corp.*, 394 F.3d 126, 160 (3d Cir. 2004) (heightened pleading standards apply where the claims "sound in fraud").

To state a claim under Section 14(a) and the rules promulgated thereunder, a plaintiff must allege facts showing that "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Tracinda Corp.* v. *DaimlerChrysler AG*, 502 F.3d 212, 228 (3d Cir. 2007).

Plaintiff has failed to carry its burden under any standard, whether it is supplied by Rule 12(b)(6), Rule 9(b), or the PSLRA, because Plaintiff has failed to meet each of the three elements of a 14(a) claim. The Amended Complaint does not identify a single material misrepresentation or omission in the Proxy Materials, Plaintiff has not pleaded any cognizable injury, and Plaintiff has not pleaded an "essential link" between the proxy solicitation and the transaction. *See Tracinda*, 502 F.3d at 228.

### A. Plaintiff does not plead any material misstatement or omission in the Proxy Statement or proxy card in violation of SEC Rule 14a-9 (Count I).

Plaintiff first alleges that the Proxy Statement is "materially false and misleading" under SEC Rule 14a-9 because it supposedly did not refer to Plaintiff's proxy materials as Plaintiff claims was required under Item 7(f) of Schedule 14A or SEC Rule 14a-19—*i.e.*, a statement directing shareholders to Plaintiff's proxy statement, the names of the individuals validly nominated for election, and a statement distinguishing PENN's nominees from Plaintiff's. ¶¶ 134-35, 138.[5] Second, relying again on Rule 14a-19, Plaintiff alleges that PENN's proxy card was materially false and misleading because it did not include Mr. Clifford or state that Mr. Hartnett and Mr. Ruisanchez were nominated by HG Vora. ¶ 139.

As an initial matter, and as Plaintiff concedes, Item 7(f) of Schedule 14A and SEC Rule 14a-19 apply *only* in a contested director election. ¶¶ 134-35. As discussed below at Section I.B,

---

[5] Item 7(f) of Schedule 14A requires a registrant, in a contested director election, to "include in its proxy statement a statement directing shareholders to refer to any other soliciting person's proxy statement for information required by Item 7 of this Schedule 14A with regard to such person's nominee or nominees." 17 C.F.R. § 240.14a-101. And SEC Rule 14a-19 provides that in a contested director election, the proxy of the registrant and any other person soliciting proxies shall "[s]et forth the names of all persons [validly] nominated for election" and "[c]learly distinguish between the nominees of the registrant [and] the nominees [of others]." 17 C.F.R. §§ 240.14a-19(e)(1), (3).

*infra*, both rules are inapplicable here because PENN's 2025 Annual Meeting was not a contested election—PENN and Plaintiff solicited proxies for the same two candidates to fill the only two available board seats.

### (1) No material misstatement or omission

Nevertheless, even if Item 7(f) and Rule 14a-19 did apply, Plaintiff has failed to plead any material misstatement or omission in the Proxy Materials.  Information is material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus., Inc.* v. *Northway, Inc.*, 426 U.S. 438, 449 (1976); *see also In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002).  "Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC*, 426 U.S. at 449.  Accordingly, "[a]n alleged misstatement or omission concerning a fact already made publicly available cannot be materially misleading." *In re Urban Outfitters, Inc. Sec. Litig.*, 103 F. Supp. 3d 635, 650 (E.D. Pa. 2015); *see also In re Discovery Labs. Sec. Litig.*, 2006 WL 3227767, at *10-11 (E.D. Pa. Nov. 1, 2006) (same).

The information Plaintiff alleges was omitted from the Proxy Materials was all publicly disclosed, making it part of the "'total mix' of information made available" to shareholders. *See TSC*, 426 U.S. at 449.  PENN's public filings disclosed that PENN and HG Vora were both soliciting proxies for the same two nominees (Mr. Hartnett and Mr. Ruisanchez), both of whom had originally been nominated by HG Vora.  *See, e.g.*, Ex. C at 3 (PENN Ent. Form Def 14A, Supplement, May 2, 2025) ("The two candidates whom the Company's Board of Directors has nominated for election at the Annual Meeting, Messrs. Johnny Hartnett and Carlos Ruisanchez, were originally recommended for nomination by HG Vora Special Opportunities Master Fund, Ltd.").  PENN's public filings further disclosed that despite there only being two board seats available at the Annual Meeting, HG Vora filed its own proxy statement purporting to solicit proxies for a third candidate, Mr. Clifford, for a board seat that was not available.  For example, in a proxy supplement filed on May 19, 2025, PENN told shareholders:

> We are writing today to provide clarity on this year's Annual Meeting. At the Annual Meeting, shareholders will have the right to elect two candidates to the Board – Johnny Hartnett and Carlos Ruisanchez – both of whom were initially proposed by HG Vora Capital Management, LLC ("HG Vora"). HG Vora is also soliciting proxies for a third director candidate, despite the fact there are only two director seats up for election. While HG Vora's proxy statement indicates it is seeking injunctive relief to permit a vote for this third candidate at the upcoming Annual Meeting, this is not true. HG Vora's public litigation filings confirm it is no longer seeking this injunction and, therefore, only two candidates will be up for election at this year's Annual Meeting.
>
> Notwithstanding HG Vora's efforts to portray this situation as a proxy contest, this is not a contested election. Both the Company and HG Vora are recommending the same two candidates at the Annual Meeting. Accordingly, we have made the decision not to spend the time and money to solicit proxies for the PENN White Card over the HG Vora Gold Card – a decision reinforced by recent conversations with our largest shareholders. Votes for Messrs. Hartnett and Ruisanchez on either card will be counted at the Annual Meeting.

Ex. G at 3 (PENN Ent. Form Def 14A, Supplement, May 19, 2025). PENN's other public filings similarly made plain that HG Vora had nominated three individuals—Messrs. Clifford, Hartnett, and Ruisanchez—and that PENN had determined to nominate Hartnett and Ruisanchez for the only two board seats available at the Annual Meeting. *See* Ex. B at 6 (PENN Ent. Form 8-K, Apr. 28, 2025 – Ex. 99.1) (stating that HG Vora had nominated three individuals—Clifford, Hartnett and Ruisanchez—and that "the Board intends to nominate Mr. Hartnett and Mr. Ruisanchez to fill *the two Class II director seats available for election* at the Annual Meeting." (emphasis added)); Ex. F at 8 (PENN Ent. Form Def 14A, S'holder Letter, May 15, 2025) ("The Board thoroughly interviewed and evaluated all three of HG Vora's nominees. In the course of that process, our Board determined that Mr. Hartnett and Mr. Ruisanchez would . . . be additive inside the Boardroom. The Board carefully considered Bill Clifford, as part of the aforementioned process; however, the Board determined that Mr. Clifford is unsuited for the PENN Board . . ."); Ex. H at 3 (PENN Ent. Form Def 14A, Supplement, May 29, 2025) ("All three of HG Vora's nominees were interviewed by the Nominating and Corporate Governance Committee with the same level of attention and open mindedness, consistent with PENN's standard evaluation process. . . . PENN's Board conducted interviews and due diligence in good faith and determined that Mr. Clifford was unsuited to serve on the Board because he did not possess the experience, skills or other

characteristics necessary for the Board."); Ex. J at 3 (PENN Ent. Form Def 14A, Press Release – ISS Report, June 9, 2025) ("[T]wo director seats are up for election at the 2025 Annual Meeting and . . . PENN and HG Vora have nominated and are recommending the same two highly-qualified candidates— Johnny Hartnett and Carlos Ruisanchez.").

Here, every fact Plaintiff says was omitted from the Proxy Materials was disclosed—publicly and repeatedly—through PENN's filings as well as in HG Vora's own proxy statement and supplements thereto. These filings—all available on PENN's website and the SEC's—are part of the "total mix of information" available to shareholders and Plaintiff has failed to plead a single material misrepresentation or omission in PENN's Proxy Materials.[6] *See TSC*, 426 U.S. at 449; *see also, e.g.*, *United Paperworks Int'l Union* v. *Int'l Paper Co.*, 985 F.2d 1190, 1198 (2d Cir. 1993) ("The 'total mix' of information may include data sent to shareholders by a company in addition to its proxy materials, as well as other information 'reasonably available to the shareholders.'") (citations omitted); *United Food & Com. Workers Union Loc. 880 Pension Fund* v. *Chesapeake Energy Corp.*, 774 F.3d 1229, 1238 (10th Cir. 2014) (holding that a Form 8-K was readily available on the SEC website and was part of the total mix of information).

*(2) No cognizable injury*

Count I fails for the additional reason that Plaintiff has failed to allege any cognizable injury. An alleged violation of Section 14(a), "without more, is insufficient to establish a cause of action under § 14(a)." *Ash* v. *GAF Corp.*, 723 F.2d 1090, 1094 (3d Cir. 1983). Plaintiff must also adequately allege injury, and "[t]he injury claimed must not result merely from a technical misadventure; it must undermine the purposes upon which the rule is based and actual damage must be susceptible to proof." *Id.* In other words, Plaintiff "must show that he suffered harm from the infringement of his corporate suffrage rights or from a corporate transaction that was approved because of inadequate disclosure in a proxy solicitation." *Id.*

---

[6] Indeed, the supplements to the Proxy Statement are explicitly incorporated into the Proxy Statement as amendments thereto. *See, e.g.*, Ex. D at 3 (PENN Ent. Form Def 14A, Supplement, May 7, 2025) ("[T]his Supplement should be read with the Proxy Statement and, from and after the date of this Supplement, any references to the 'Proxy Statement' shall be deemed to include the Proxy Statement as amended by this Supplement.").

Plaintiff does not purport to act on behalf of other PENN stockholders, and it does not—and cannot—claim that it was injured by being materially misled in any way by PENN's Proxy Materials. Plaintiff nowhere alleges that it lacked the information it needed to cast an informed vote at the Annual Meeting. *See, e.g.*, *Ash*, 723 F.2d at 1094-95 (holding that plaintiff failed to show injury where the alleged 14(a) violation did not influence his vote at the annual meeting). Instead, Plaintiff claims that it suffered economic loss in the form of costs it incurred in preparing and filing its own proxy materials in advance of the Annual Meeting. ¶¶ 142, 151. But Plaintiff ignores the reality that *Plaintiff sought* to wage a proxy fight against PENN—in spite of the fact that PENN and Plaintiff were nominating the same two candidates for the only two available board seats—and therefore was required to file its own proxy materials and universal proxy card regardless of what was in PENN's Proxy Materials. *See* 17 C.F.R. § 240.14a-19(e); *cf. Royal Bus. Grp., Inc.* v. *Realist, Inc.*, 933 F.2d 1056, 1061 (1st Cir. 1991) (affirming dismissal of 14(a) claim brought by aggrieved proxy contestant and explaining "the remedy sought—reimbursement of the expenses [plaintiff] incurred in the abortive proxy contest—does not dovetail in any discernible way with Section 14(a)'s underlying purpose"). Plaintiff has therefore not alleged any injury directly resulting from the alleged misrepresentations or omissions in PENN's Proxy Materials.

Moreover, because the loss causation requirement of the PSLRA applies to Section 14(a) claims, Plaintiff "must prove both economic loss and proximate causation . . . in order to satisfy the loss causation element of 14(a)." *Jaroslawicz* v. *M&T Bank Corp.*, 2024 WL 474846, at *13 (D. Del. Feb. 7, 2024), *reconsideration denied*, 2024 WL 2975766 (D. Del. June 13, 2024); *see also* 15 U.S.C. § 78u-4(b)(4) (plaintiff bears "the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages"). "In order to satisfy the loss causation requirement . . . the plaintiff must show that the defendant misrepresented or omitted the very facts that were a substantial factor in causing the plaintiff's economic loss." *McCabe* v. *Ernst & Young, LLP*, 494 F.3d 418, 426 (3d Cir. 2007). Plaintiff has not pleaded *any* proximate causation between the alleged omitted or misrepresented facts in PENN's Proxy Materials and its alleged injury, further requiring dismissal of Count I.

*(3) No causal link between the proxy solicitation and the transaction*

To state a claim under Section 14(a), a plaintiff must also show a "causal relationship between the violation and the injury for which he seeks redress." *Mills* v. *Elec. Auto-Lite Co.*, 396 U.S. 375, 385 (1970).  Plaintiff alleges that the Proxy Statement "is an essential link in Defendants' efforts to entrench the current Board in office, limit the influence if its shareholders, and guarantee Defendants' desired electoral outcome at the 2025 Annual Meeting."  ¶ 143.  But the thrust of Plaintiff's grievance is that Clifford was not seated on the PENN board because there were only two seats available at the Annual Meeting.  ¶¶ 139, 145.  Plaintiff has not pleaded any "essential link" between the *Proxy Statement* and Clifford not being seated on the PENN board.  Clifford was not seated on the PENN board because the board voted to reduce the size of the board following Mr. Naples' retirement—Plaintiff challenges that action in this proceeding, but that challenge is one based on state law, not the federal securities laws.  Because the Amended Complaint "fails to establish a causal nexus between [Plaintiff's] alleged injury and some corporate transaction authorized (or defeated) as a result of the allegedly false and misleading proxy statement[]," Plaintiff's Count I should be dismissed.  *Royal Business Group*, 933 F.2d at 1063.

Count I thus fails to state a claim for violation of Section 14(a) or Rule 14a-9.

## B.  Plaintiff fails to plead any violation of SEC Rule 14a-19 in Count II.

 Plaintiff alleges in Count II that Defendants violated SEC Rule 14a-19 because PENN's proxy card did not include Clifford and allegedly did not distinguish between PENN's nominees (Hartnett and Ruisanchez) and Plaintiff's nominees (Hartnett and Ruisanchez).  ¶ 150.  Rule 14a-19 provides that in a contested election (unless certain exemptions apply), the company's proxy card must include (and clearly distinguish between) the slate of opposition candidates and the slate of management-supported candidates.  17 C.F.R. §§ 240.14a-19(e)(1), (3).

Plaintiff's claim fails at the threshold, because Rule 14a-19 applies only where there is a contested director election.  *See Universal Proxy*, Sec. Exch. Act Release No. 34-93596, 68 Fed. Reg. 68330, Inv. Co. Act Release No. IC-34419, 2021 WL 5545055 (Nov. 17, 2021); *see also*

¶ 135 (admitting rule only applies to contested elections). PENN's June 2025 election was not contested. The SEC defines a "contested election" as "an election of directors where a registrant is soliciting proxies in support of nominees and a person or group of persons is soliciting proxies in support of director nominees *other than the registrant's nominees*." *Universal Proxy*, 2021 WL 5545055, at *3 n.9 (emphasis added). PENN and Plaintiff solicited proxies for the same candidates to fill the only two available board seats. Plaintiff challenges the board's *motivation* for reducing its size by claiming it "may not do so . . . to thwart shareholder voting rights," but Plaintiff concedes that the *power* to make that decision was within the board's authority. *See* ¶ 12 (acknowledging that "boards are permitted to adjust their own size"); ¶ 88 (same). As a result, there were two director positions—not three—up for election at the Annual Meeting, and PENN and Plaintiff nominated the same candidates for those positions. Because Rule 14a-19 applies only to contested director elections, Plaintiff has failed to allege a factual or legal basis for Rule 14a-19's applicability to this action and its claims premised on violations of that rule must be dismissed.

Even if Rule 14a-19 did apply, Plaintiff's claims still fail. PENN's proxy card for the Annual Meeting contained no material misstatements or omissions. The SEC's compliance and disclosure interpretations on the Rule's application address situations akin to what PENN faced at the Annual Meeting and PENN complied with the SEC's guidance.

First, the SEC guidance makes clear that "[o]nly duly nominated candidates are required to be included on a universal proxy card," and if a registrant determines that a candidate's nomination by a shareholder does not satisfy applicable state law and the registrant's governing documents, then that nominee need not be included.[7] PENN was not required under Rule 14a-19 to include Mr. Clifford on its proxy card after the board determined that his nomination was improper under PENN's bylaws, namely because he was nominated by HG Vora for a board seat that no longer existed. The only validly nominated candidates standing for election at the Annual

---

[7] SEC Proxy Rules and Schedules 14A/14C Compliance and Disclosure Interpretations, Question 139.04 (last updated Jan. 27, 2025), *available at* https://www.sec.gov/rules-regulations/staff-guidance/compliance-disclosure-interpretations/proxy-rules-schedules-14a14c.

Meeting were Mr. Hartnett and Mr. Ruisanchez—both of whom were nominated by PENN and included on its proxy card. PENN could not have "distinguish[ed] between Defendants' nominees and those of Plaintiff," ¶ 150, because Plaintiff and PENN nominated the same candidates. *See, e.g.*, Ex. J at 3 (PENN Ent. Form Def 14A, Press Release – ISS Report, June 9, 2025) ("[T]wo director seats are up for election at the 2025 Annual Meeting and . . . PENN and HG Vora have nominated and are recommending the same two highly-qualified candidates—Johnny Hartnett and Carlos Ruisanchez.").

Second, the SEC also offered guidance on what a registrant's "obligations with respect to its proxy statement disclosures and solicitation efforts" are where a "registrant determines that a dissident shareholder's director nominations do not comply with its advance notice bylaw requirements and excludes the dissident shareholder's nominees from its proxy card," and the "dissident shareholder then initiates litigation challenging the registrant's determination regarding the validity of the director nominations."[8]  The SEC stated that the registrant "must disclose in its proxy statement its determination that the dissident shareholder's director nominations are invalid, a brief description of the basis for that determination, the fact that the dissident shareholder initiated litigation challenging the determination, and the potential implications (including any risks to the registrant or its shareholders) if the dissident shareholder's nominations are ultimately deemed to be valid." *Id.*

PENN followed this SEC guidance. As detailed above, PENN disclosed that Mr. Clifford's nomination was invalid because its board resolved to reduce the number of seats available at the Annual Meeting from three to two and nominated two of Plaintiff's nominees—Mr. Hartnett and Mr. Ruisanchez—for the two available seats. PENN's May 15, 2025 proxy supplement stated:

> We have vetted HG Vora's third nominee more than once in the past
> five years, including in 2020 when there was no actual, threatened
> or purported proxy contest.  At that time, we concluded that
> Mr. Clifford was unsuited to serve on the Board because he did not

---

[8] SEC Proxy Rules and Schedules 14A/14C Compliance and Disclosure Interpretations, Question 139.05 (last updated Jan. 27, 2025), *available at* https://www.sec.gov/rules-regulations/staff-guidance/compliance-disclosure-interpretations/proxy-rules-schedules-14a14c.

> possess the experience, skills or other characteristics necessary to make a positive contribution to the Board or the Company. Five years later, our conclusion regarding Mr. Clifford remains the same. As a result, we determined that it is in the best interest of the Company, all shareholders and other constituents to nominate Messrs. Hartnett and Ruisanchez for election to the Board while, in the absence of a fitting third candidate, reducing the Board size to eliminate the vacancy created by the retirement of Ron Naples.

Ex. F at 9 (PENN Ent. Form Def 14A, S'holder Letter, May 15, 2025); *see also* Ex. B (PENN Ent. Form 8-K, Apr. 28, 2025) ("[O]n April 25, 2025, the Board (i) decreased the size of the Board from nine to eight members, (ii) decreased the number of Class II directors from three to two."); Ex. G at 3 (PENN Ent. Form Def 14A, May 19, 2025) ("At the Annual Meeting, shareholders will have the right to elect two candidates to the Board – Johnny Hartnett and Carlos Ruisanchez – both of whom were initially proposed by HG Vora Capital Management, LLC ('HG Vora'). HG Vora is also soliciting proxies for a third director candidate, despite the fact there are only two director seats up for election.").[9]  And consistent with the SEC guidance, PENN's proxy supplements disclosed that Plaintiff filed litigation challenging the board's actions and the potential implications of that litigation. Ex. D at 3 (PENN Ent. Form Def 14A, Supplement, May 7, 2025) (disclosing HG Vora's lawsuit and informing shareholders that "if the HG Vora Plaintiffs are successful in their lawsuit, PENN may be required to, among other things, increase the number of Class II directors to three, nominate three directors for election at the Annual Meeting, amend the Proxy Statement, provide new proxy cards to shareholders and discard previously-furnished proxy cards received by PENN, reschedule the Annual Meeting and/or pay damages to the HG Vora Plaintiffs.").

PENN discharged all of its duties under Rule 14a-19 by disclosing that Mr. Clifford's

---

[9] PENN's May 15, 2025 filing also stated that Mr. Clifford was "unsuited for the PENN Board because, among other reasons," (i) "Mr. Clifford failed to demonstrate the base level of open-mindedness required of all directors in order to explore value-generating solutions," (ii) "[d]uring his time as Chief Financial Officer at PENN, Mr. Clifford advocated against key initiatives including bringing IT and financial processes in line with the 21st century, the creation of a customer database and related loyalty program, the development of hotels and other amenities at properties and the adoption of standardized and centralized software, systems and shared services," (iii) "ISS recommended shareholders withhold their votes from Mr. Clifford at Drive Shack Inc. twice citing 'material governance failures' during his tenure on the Board," and (iv) "Mr. Clifford lacks digital gaming and online sports betting experience—areas essential to the future of PENN's business and the industry—and his general experience is redundant with the significant real estate and financial expertise already represented on our Board." Ex. F at 8-9 (PENN Ent. Form Def 14A, S'holder Letter, May 15, 2025).

nomination had been rejected, disclosing that the board had determined that reducing the available seats up for election at the Annual Meeting from three to two was in the Company's best interests, detailing the reasons for its decision, and cautioning shareholders about litigation in connection with the Annual Meeting.  Count II thus fails to state a claim for any of the alleged violations of Rule 14a-19.

Moreover, Plaintiff's *own* proxy statement and proxy card stated that if there were two seats available for election at the Annual Meeting, that the proxy would *only* be voted with respect to Hartnett and Ruisanchez, not with respect to Clifford.  *See* Ex. E at 16, 25 (PENN Ent. Form Def 14A, HG Vora Definitive Proxy Statement, May 12, 2025) ("If there are two (2) Class II director seats up for election, then the enclosed GOLD universal proxy card will only be voted in accordance with your instructions with respect to the Nominees Johnny Hartnett and Carlos Ruisanchez *and will not be voted with respect to the Nominee William Clifford*." (emphasis added)).  Plaintiff's own proxy statement thus recognized that in a scenario where only two seats were available—as was the case at the Annual Meeting—its proxy card would only authorize votes to be cast for Hartnett and Ruisanchez.

Finally, Count II fails for the additional reasons that Plaintiff has not alleged any cognizable injury or the required transactional nexus to state a claim under Section 14(a).  *See* Section I.A, *supra*.

## II. Plaintiff's State-Law Causes of Action (Counts III and V) Should Be Dismissed for Lack of Subject Matter Jurisdiction.

Counts III and V each seek to bring claims challenging the PENN board's decision to reduce its size to eliminate the vacancy created by the retirement of defendant Ron Naples under Pennsylvania state law.[10]  The sole basis asserted for the Court's subject matter jurisdiction over these claims is supplemental under 28 U.S.C. § 1367.  ¶ 32.  Because Plaintiff's federal claims

---

[10] Pursuant to the Court's Orders of July 7, 2025 and August 20, 2025, Plaintiff's derivative claim for breach of fiduciary duty (Count IV) is stayed pending the special litigation committee's investigation.  If the Court dismisses Plaintiff's other state-law causes of action for lack of subject matter jurisdiction, Count IV should be dismissed as well.

should be dismissed as discussed above, the source of the Court's original jurisdiction is gone and the Court should dismiss the state law claims too under 28 U.S.C. § 1367(c)(3).  *Elkadrawy* v. *Vanguard Group, Inc.*, 584 F.3d 169, 174 (3d Cir. 2009) ("A district court may decline to exercise supplemental jurisdiction over a claim if 'the district court has dismissed all claims over which it has original jurisdiction.'" (quoting 28 U.S.C. § 1367(c)(3))).

### III.   Plaintiff's Non-Stayed State-Law Causes of Action (Counts III and V) Should Be Dismissed Because They Fail to State Any Claim.

Should the Court nevertheless choose to maintain jurisdiction, the non-stayed state-law claims (Counts III and V) should be dismissed under Rule 12(b)(6).

#### A.   "Violation of Shareholder Voting Rights" is not a cognizable claim under Pennsylvania law.

Count III seeks redress under Section 1793 of the BCL for a supposed "violation of shareholder voting rights."  ¶¶ 157-67.  But Section 1793 has nothing to do with voting rights.  In fact, it "is not a separate and distinct cause of action" at all.  *Hornung* v. *Schauseil Ins. Assocs., Inc.*, 619 A.2d 775, 777 (Pa. Super. Ct. 1993).  It "do[es] not define any substantive rights or duties" and instead only "permit[s] judicial review" that "depend[s] upon a finding of improper conduct" under some other law.  *Gundlach* v. *Swain*, 1996 WL 24748, at *4 n.9 (E.D. Pa. Jan. 24, 1996), *aff'd*, 91 F.3d 123 (3d Cir. 1996) (interpreting the statutory equivalent of Section 1793 under Pennsylvania's nonprofit corporation law).  Section 1793 allows the court to review corporate actions that "conflict with specific statutory requirements" and requires that a claim invoking Section 1793 "assert[] a cognizable violation of Pennsylvania law."  *High River Ltd. P'ship* v. *Mylan Labs., Inc.*, 383 F. Supp. 2d 660, 665 (M.D. Pa. 2005).  To bring an action under Section 1793, therefore, Plaintiff must identify a substantive law that has been violated.

Count III must be dismissed because Plaintiff cannot do so.  Plaintiff says, without authority, that its cause of action is for "violation of shareholder voting rights," but no such action lies under Pennsylvania law at all, let alone under Section 1793, and "[p]laintiffs cannot maintain a state law cause of action which does not exist."  *Avery* v. *Mitchell*, 1999 WL 240339, at *10

(E.D. Pa. Apr. 20, 1999).

Plaintiff does not contend that the change in the board's size ran afoul of the BCL or PENN's governing documents.  Nor could it.  The BCL explicitly provides that the "number of directors shall be fixed by, or in the manner provided in, the bylaws," 15 Pa. C.S. § 1723(a), and PENN's bylaws authorize the board to set its own size:   "[T]he number of directors of the Corporation constituting the whole board and the number of directors constituting each class of directors as provided by Section 4.03(d) shall be fixed (and may be changed from time to time) solely by resolution of the board of directors."  Ex. A § 4.03(a).

That leaves common law.  In its Amended Complaint, Plaintiff invokes two decisions applying Pennsylvania law, but neither of which provides for the cause of action Plaintiff seeks to bring in Count III.  The first is *Reifsnyder* v. *Pittsburgh Outdoor Advert. Co.*, 405 Pa. 142 (1961).  Plaintiff cites this decision for the proposition that "a shareholder may bring a direct action to protect his voting rights."   ¶ 3.  The actual question before the court in *Reifsnyder* was whether a plaintiff should have to pay costs and fees for an unsuccessful prior litigation.  405 Pa. at 144.  In resolving that issue, the court assessed whether a minority stockholder had standing to challenge an alleged dilution of his voting power by a majority stockholder.  In the context of "a fiduciary duty owed by the majority shareholders to the minority," the court concluded that minority shareholders could bring suit directly to protect their "right to vote" and to prevent "dilution" of their voting power.  *Id.* at 148-49.  But Plaintiff here does not sue in the context of any fiduciary duty owed by a controller—PENN does not have a majority stockholder—and it does not seek to protect its right to vote or to prevent dilution of its voting power—it does not dispute that it was able to vote all of its shares at the Annual Meeting.  Instead, it seeks to challenge an action by PENN's board to reduce the number of directors in advance of that meeting.  *Reifsnyder* has no application in this circumstance.  As important, *Reifsnyder* was issued decades before the legislature adopted Section 1717 of the BCL, which makes clear that the directors of Pennsylvania corporations owe their fiduciary duties exclusively to the corporation itself and not to shareholders directly.  *See* 15 Pa. C.S. § 1717 ("The [fiduciary] duty of the board of directors, committees of

- 20 -

the board, and individual directors … is solely to the business corporation and not to any shareholder or creditor or any other person or group ….").  Accordingly, even if one could interpret *Reifsnyder* to support the proposition that a stockholder may bring a direct action against fiduciaries for redress alleged interference with voting power, the BCL no longer allows for such a suit.

The only other Pennsylvania case Plaintiff invokes is *Warehime* v. *Warehime*, 777 A.2d 469 (Pa. Super. Ct. 2001), which Plaintiff says stands for the proposition that directors cannot "undermine" shareholders' ability to elect directors "by attempting to substitute their own wisdom for that of the shareholders." ¶ 13.  In *Warehime*, the Superior Court reversed a trial court's denial of a preliminary injunction, holding that a reclassification of shares of a company should have been enjoined because it enabled an incumbent chairman to preserve his position on a board over the wishes of a majority of the shareholders.  777 A.2d at 477-78.  The case is thus distinguishable: not one incumbent from the PENN board was reelected at the 2025 annual meeting, and the PENN board did not undertake any reclassification of shares.  It is also bad law:  the Pennsylvania Supreme Court reversed the decision more than two decades ago.  *See Warehime* v. *Warehime*, 860 A.2d 41, 48 (Pa. 2004).  The Supreme Court found that the Superior Court applied the wrong standard of review in reversing the trial court, which it held had properly concluded that the shareholder plaintiff "had not adduced *any* evidence of irreparable harm."  *Id*. at 47.

Plaintiff otherwise relies only on decisions from other jurisdictions sustaining breach of fiduciary duty claims and other claims under Delaware law.  *See* ¶ 3 (citing *EMAK Worldwide, Inc.* v. *Kurz*, 50 A.3d 429, 433 (Del. 2012)); ¶ 13 (citing *Vejseli* v. *Duffy*, 2025 WL 1452842, at *13 (Del. Ch. May 21, 2025)); ¶ 12 (citing *MM Cos., Inc.* v. *Liquid Audio, Inc.*, 813 A.2d 1118, 1129, 1132 (Del. 2003)); ¶ 88 (citing *IBS Fin. Corp.* v. *Seidman & Assocs.*, 136 F.3d 940, 950-51 (3d Cir. 1998), and *Pell* v. *Kill*, 135 A.3d 764, 788 (Del. Ch. 2016)).  Each applies principles of Delaware law on fiduciary duties, but Plaintiff has expressly disclaimed that Count III is premised on any claim of fiduciary breach.  *See* Pls.' Opp'n to Defs.' Motion to Stay, Dkt. 21, at 18 ("Counts IV and VI are state-law claims brought under the BCL that rise and fall independent of the breach

of fiduciary duty claim."); *id.* at 19 ("The legal bases for Counts IV and VI, on the one hand, and HG Vora's breach of fiduciary duty claim, on the other, are entirely distinct."). Even if Plaintiff were relying on fiduciary principles for Count III, these Delaware cases would still be inapposite. In Delaware, fiduciary duties are owed directly to stockholders. *See, e.g.*, *McRitchie* v. *Zuckerberg*, 315 A.3d 518, 543 (Del. Ch. 2024) ("[D]irectors owe fiduciary duties of care and loyalty to the corporation *and its shareholders*." (emphasis added)). Under Pennsylvania law, by contrast, directors owe fiduciary duties "solely to the business corporation and not to any shareholder." 15 Pa. C.S. § 1717. This distinction is fatal, because individual stockholders like Plaintiff here lack standing to assert direct claims for breach of fiduciary duty under Pennsylvania law. *Id.*; *see also Stilwell Value P'rs I, LP* v. *Prudential Mut. Holding. Co.*, 2007 WL 2345281, at *9, 11 (E.D. Pa. Aug. 15, 2007) (the "plain language of the statute precludes a direct suit for breach of fiduciary duty" by a shareholder because there "simply is no duty running from the directors to the shareholders"). Such claims belong to the corporation and can only be brought derivatively. *See City of Riviera Beach Gen. Emps. Ret. Sys.* v. *Mylan N.V.*, 2016 WL 4367549, at *14-16 (W.D. Pa. 2016) (dismissing "direct claim for breach of fiduciary duty" because "such a claim belongs to the corporation," and holding that the claim "fails as a matter of law because the board of directors of a Pennsylvania corporation does not have a fiduciary duty to individual shareholders"). Plaintiff has asserted a derivative breach of fiduciary duty claim in Count V, which is stayed pending the special litigation committee's investigation.

Count III thus fails to state any cognizable claim and should be dismissed.

**B. The eight directors on PENN's board are already divided into classes "as nearly equal in number as possible."**

Count V should likewise be dismissed. Plaintiff alleges that the board violated Section 1724 of the BCL and Article 6(a) of PENN's Second Amended and Restated Articles of Incorporation (the "Articles"), each of which provide that the classes of the board shall be "as nearly equal in number as possible." *See* ¶¶ 14, 40, 178-83. Plaintiff complains that prior to the reduction in board size, PENN had three director classes, each with three seats, and that by reducing the board by one seat, the classes

now have three seats in Class I, two seats in Class II, and three seats in Class III. *Id.*

"The touchstone of statutory interpretation is that where a statute is unambiguous, the judiciary may not ignore the plain language 'under the pretext of pursuing its spirit,' 1 Pa. C.S. § 1921(b), for the language of a statute is the best indication of legislative intent." *Colville* v. *Allegheny Cnty. Ret. Bd.*, 926 A.2d 424, 431 (Pa. 2007). "When the words of a statute are clear, there is no need to look beyond the plain meaning of a statute." *Id.*; *see also* 1 Pa. C.S. § 1903(a) ("Words and phrases shall be construed according to rules of grammar and according to their common and approved usage.").

Section 1724's requirement that each class "shall be as nearly equal in number as possible" is satisfied here. PENN's board of directors now comprises eight directors across three director classes. Eight is not divisible by three. As required by Pennsylvania law, and in accordance with PENN's Articles, PENN's directors are allocated to classes "as nearly equal in number ***as possible***" for an eight-member board. 15 Pa. C.S. § 1724(b)(1) (emphasis added); Article 6(a) (emphasis added). There are three Class I directors, two Class II directors, and three Class III directors (3-2-3). *See, e.g.*, Ex. B (PENN Ent. Form 8-K, Apr. 28, 2025). By simple arithmetic, the allocation of eight directors across three classes cannot be any closer to "as nearly equal" than 3-2-3. Count V fails to state a claim under the plain language of Section 1724 and should therefore be dismissed.

## IV.    All Discovery Is Stayed Pending Resolution of This Motion.

Under the PSLRA, discovery in this action is automatically stayed while this motion to dismiss is pending. The PSLRA provides that "in any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss." 15 U.S.C. § 78u-4(b)(3)(B). This Court has consistently held that the "automatic-stay provision of the PSLRA applies to federal securities claims brought individually in addition to claims brought collectively." *Dipple* v. *Odell*, 870 F. Supp. 2d 386, 389-90 (E.D. Pa. 2012); *see also id.* ("Congress knew how to limit the application of the PSLRA to class actions only—it chose not to limit the automatic-stay provision in this manner.").

The automatic stay applies not only to Plaintiff's federal securities claims but to all of Plaintiff's claims, including those based on alleged violations of state law.  This Court has likewise held, in accordance with "the mass of courts," "that the automatic stay provision in the PSLRA applies to pend[e]nt state law claims" because "Congress' attempt to address [concerns of discovery abuse] would be rendered meaningless if securities plaintiffs could circumvent the stay simply by asserting pendent state law claims in federal court in conjunction with their federal law claims."  *Spina* v. *Refrigeration, Serv. & Eng'g, Inc.*, 2014 WL 4996200, at *5 (E.D. Pa. 2014) (alteration in original) (quoting *SG Cowen Sec. Corp.* v. *U.S. Dist. Ct. for the N. Dist. of Cal.*, 189 F.3d 909, 913 n.1 (9th Cir. 1999)).

Accordingly, all discovery must be stayed pending resolution of this motion.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant Defendants' motion to dismiss.

Respectfully submitted,

STEVENS & LEE

BY: */s/ Stacey A. Scrivani*
     Stacey Scrivani
     Stevens & Lee, P.C.
     PA I.D. No. 84275
     111 N. 6th Street
     Reading, PA 19601
     Telephone:  (610) 478-2086
     Fax:  (610) 988-0812
     Email:  stacey.scrivani@stevenslee.com

Jason P. Rudloff
Stevens & Lee, P.C.
PA I.D. No. 331263
555 City Avenue
Bala Cynwyd, PA 19004
Telephone: (215) 751-2882
Email: jason.rudloff@stevenslee.com

Ryan McLeod *(pro hac vice)*
Attorney I.D. No. 5038
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY 10019
Tel: (212)-403-1175
RAMcLeod@wlrk.com

Cynthia Fernandez Lumermann *(pro hac vice)*
Attorney I.D. No. 5071618
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY 10019
Tel: (212)-403-1162
CFernandez@wlrk.com