**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HG VORA CAPITAL MANAGEMENT, LLC, HG VORA SPECIAL OPPORTUNITIES MASTER FUND, LTD., and DOWNRIVER SERIES LP – SEGREGATED PORTFOLIO C, on behalf of themselves and derivatively on behalf of PENN ENTERTAINMENT, INC., | Case No.: 5:25-cv-02313-CH |
| Plaintiffs, | |
| -against- | |
| PENN ENTERTAINMENT, INC., JAY SNOWDEN, VIMLA BLACK-GUPTA, ANUJ DHANDA, DAVID HANDLER, MARLA KAPLOWITZ, JANE SCACCETTI, BARBARA SHATTUCK KOHN, RONALD NAPLES, and SAUL REIBSTEIN | |
| Defendants, | |
| -and- | |
| PENN ENTERTAINMENT, INC., | |
| Nominal Defendant. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' AMENDED MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND ........................................................................................3

LEGAL STANDARD.....................................................................................................6

ARGUMENT ..................................................................................................................7

    A.    HG Vora States a Claim for Violations of Section 14(a) of the Exchange Act and SEC Rules 14a-9 & 14a-19 (Counts I and II) ..........................7

        1.    PENN's Proxy Materials Omit Material Information..................................8

        2.    The Omission of Information Required by the SEC Rules Caused Injury...............................................................12

        3.    The Proxy Solicitation Was An Essential Link in the Board Reduction Scheme ....................................14

    B.    HG Vora States a Claim Under Pennsylvania's Business Corporation Law (Counts III and V)...................................15

        1.    HG Vora Has Stated a Claim Under 15 Pa.C.S. § 1793 Based on the Invalidity of the Board Reduction Scheme Which Violates Shareholder Voting Rights...........................................15

        2.    Defendants' Reading of Section 1793 Has No Basis in Law ...................18

        3.    HG Vora Has Stated a Claim Under 15 Pa.C.S. § 1724 Because the Board Reduction Scheme Caused the Board's Classes To Become Unequal in Number...........................22

        4.    Regardless of the Court's Ruling on the Federal Claims, the Court Should Retain Jurisdiction Over This Action ...........................................23

    C.    The Court Should Partially Lift the PSLRA Stay of Discovery ...........................23

CONCLUSION..............................................................................................24

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>Cases</u>

*Ash v. GAF Corp.*,
   723 F.2d 1090 (3d Cir. 1983) ................................................................................................13

*Ashford Hosp. Tr., Inc. v. Cygnus Cap., Inc.*,
   2021 WL 3631142 (N.D. Tex. Feb. 18, 2021) ......................................................................24

*Blasius Indus., Inc. v. Atlas Corp.*,
   564 A.2d 651 (Del. Ch. 1988) ...............................................................................................16

*Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*,
   No. 20-CV-9992 (PAC), 2021 WL 4443258 (S.D.N.Y. Sept. 27, 2021) ..............................13

*Hedges v. United States*,
   404 F.3d 744 (3d Cir. 2005) ...................................................................................................6

*Hickey v. Univ. of Pittsburgh*,
   81 F.4th 301 (3d Cir. 2023) ..............................................................................................6, 8

*High River Ltd. P'ship v. Mylan Lab'ys, Inc.*,
   383 F. Supp. 2d 660 (M.D. Pa. 2005) ....................................................................................18

*Hornung v. Schauseil Ins. Assocs., Inc.*,
   422 Pa. Super. 472 (1993) .......................................................................................................18

*J. I. Case Co. v. Borak*,
   377 U.S. 426 (1964) ...............................................................................................................13

*Jack v. S. Park Ventures, LLC*,
   2018 WL 1158370 (S.D. Ohio Mar. 5, 2018) .......................................................................21

*Jaroslawicz v. M&T Bank Corp.*,
   962 F.3d 701 (3d Cir. 2020) ...............................................................................................7, 9

*Jewelcor Mgmt., Inc. v. Thistle Grp. Holdings, Co.*,
   60 Pa. D. & C.4th 391 (Com. Pl. 2002) ................................................................................19

*Johnson v. Farm J., Inc.*,
   2019 WL 3530423 (E.D. Pa. Aug. 1, 2019) .....................................................................16, 21

*Kellner v. AIM ImmunoTech Inc.*,
   307 A.3d 998 (Del. Ch. 2023) ...............................................................................................10

*In re Meridian Sec. Litig.*,
　　772 F. Supp. 223 (E.D. Pa. 1991) ...................................................................14

*MM Companies, Inc. v. Liquid Audio, Inc.*,
　　813 A.2d 1118 (Del. 2003) ...........................................................................17

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*,
　　2015 WL 1565462 (E.D. Mich. Apr. 8, 2015) .................................................23

*Pell v. Kill*,
　　135 A.3d 764 (Del. Ch. 2016) .......................................................................17

*Phillips v. Cnty. of Allegheny*,
　　515 F.3d 224 (3d Cir. 2008) .......................................................................6, 22

*Pinker v. Roche Holdings Ltd.*,
　　292 F.3d 361 (3d Cir. 2002) ...........................................................................6

*Reifsnyder v. Pittsburgh Outdoor Advert. Co.*,
　　173 A.2d 319 (1961) ..................................................................1, 19, 20, 21

*In re Royal Ahold N.V. Sec. & Erisa Litig.*,
　　220 F.R.D. 246 (D. Md. 2004) .......................................................................23

*Royal Bus. Grp., Inc.* v. *Realist, Inc.*,
　　933 F.2d 1056 (1st Cir. 1991) .......................................................................14

*S'holders Protective Comm. v. California Time Petroleum*, 1971 WL 321, at *2
　　(Del. Ch. Sept. 23, 1971) ...............................................................................9

*Simms v. Exeter Architectural Prods., Inc.*,
　　868 F. Supp. 677 (M.D. Pa. 1994) .........................................................16, 18, 19

*Solfanelli v. Mainwaring*,
　　1992 WL 332223 (E.D. Pa. Nov. 4, 1992) ....................................................14

*Stricklin v. Ferland*,
　　1999 WL 961245 (E.D. Pa. Oct. 13, 1999) ...................................................13

*Tracinda Corp. v. DaimlerChrysler AG*,
　　502 F.3d 212 (3d Cir. 2007) ...........................................................................7

*Traher v. Republic First Bancorp, Inc.*,
　　432 F.Supp.3d 533 (E.D. Pa. 2020) .........................................................15, 16, 18

*In re Urb. Outfitters, Inc. Sec. Litig.*,
　　103 F. Supp. 3d 635 (E.D. Pa. 2015) ...............................................................9

*Vejseli v. Duffy*,
  2025 WL 1452842 (Del. Ch. May 21, 2025)..........................................................16

*venBio Select Advisor LLC v. Immunodynamics, Inc.*,
  Case No. 2017-0108-JTL (Del. Ch. Mar. 9, 2017)................................................17

*Warehime v. Warehime*,
  2001 PA Super 141 (Pa. Super. 2001) ...............................................16, 19, 20, 21

*Warehime v. Warehime*,
  580 Pa. 201 (2004) ............................................................................................20

*In re WorldCom, Inc. Sec. Litig.*,
  234 F. Supp. 2d 301 (S.D.N.Y. 2002)................................................................24

*Wurtzel v. Park Towne Place Apartments Ltd. P'ship*, 62 Pa. D. & C.4th 330, 347
  (Com. Pl. 2001) ................................................................................................19

## Statutes

15 Pa. C.S. § 1717..............................................................................................20

15 Pa. C.S. § 1724.........................................................................................15, 22

15 Pa. C.S. § 1791.........................................................................................15, 21

15 Pa.C.S. § 1793 ....................................................................................... passim

15 U.S.C.A. § 78n..................................................................................................7

15 U.S.C.A. § 78u-4............................................................................................23

28 U.S.C.§ 1367..................................................................................................23

Delaware General Corporation Law § 225 .........................................................21

## Other Authorities

17 C.F.R. § 240.14a-3.......................................................................................7, 8

17 C.F.R. § 240.14a-9.......................................................................................7, 8

17 C.F.R. § 240.14a-19 ................................................................................ passim

17 C.F.R. § 240.14a-101 .......................................................................................7

Plaintiffs HG Vora Capital Management, LLC, HG Vora Special Opportunities Master Fund, Ltd., and Downriver Series LP – Segregated Portfolio C (collectively, "Plaintiffs" or "HG Vora") respectfully submit this opposition to the Amended Motion to Dismiss (Dkt. 38, the "Motion" or "Mot.") filed by Defendants Penn Entertainment, Inc. ("PENN" or the "Company"), Jay Snowden, Vimla Black-Gupta, Anuj Dhanda, David Handler, Marla Kaplowitz, Saul Reibstein, Jane Scaccetti, Ronald Naples, and Barbara Shattuck Kohn (the "Director Defendants," and together with PENN the "Defendants").

## PRELIMINARY STATEMENT

The Pennsylvania Supreme Court declared more than sixty years ago that "[t]he right to vote is basic and fundamental to most shares of stock." *Reifsnyder v. Pittsburgh Outdoor Advert. Co.*, 173 A.2d 319, 322 (1961). Here, taking the position that they know better than the stockholders who own the Company, Defendants unabashedly seek to undermine that core right by disregarding the 62 million votes that stockholders cast for a duly-nominated, independent director candidate, William J. Clifford, because Mr. Clifford disagrees with their strategy for the Company. Defendants effectuated their scheme (the "Board Reduction Scheme") through numerous unlawful acts—purporting to reduce the size of the Board from nine to eight in an admitted effort to prevent shareholders from voting on Mr. Clifford's candidacy, then issuing proxy materials that omitted material information about Mr. Clifford's candidacy in violation of federal securities laws and disregarding the votes cast for him. Defendants assert a hodge-podge of excuses as to why they should not have to defend their actions in court. None have merit.

*First,* bootstrapping their illegal Board Reduction Scheme into something of an affirmative defense, Defendants seek to dismiss Plaintiffs' two federal securities claims by asserting that they were not required to make certain disclosures about Mr. Clifford's candidacy, purportedly because the director election at PENN's 2025 annual shareholder meeting (the "Annual Meeting") was not

contested.  Indeed, Defendants refused to list Mr. Clifford as one of HG Vora's nominees on their proxy card, which the universal proxy rules explicitly require for a contested election.  *See* 17 CFR § 240.14a-19 (the "Universal Proxy Rules").  Defendants' argument ignores Plaintiffs' well-pled allegations in the First Amended Complaint (Dkt. 35, "FAC") that the election *was* contested because Plaintiffs' solicited proxies for a nominee (Mr. Clifford) other than the Company's nominees, *see* FAC ¶ 95; 17 CFR § 240.14a-19, and that Defendants themselves conceded the election was contested just days before filing their definitive proxy statement.  FAC ¶¶ 80-81, 95.  As such, Defendants' Motion asks the Court to ignore those allegations and resolve disputed factual issues against Plaintiffs on a motion to dismiss record, running afoul of well-settled principles of pleading.

Defendants further argue for dismissal of Plaintiffs' federal securities claims, alleging a lack of injury and causation, but ignore that their disclosure violations have impinged on shareholders' corporate suffrage rights (including HG Vora's) and the integrity of the electoral process.  Their actions have (i) prevented shareholders voting on Defendants' proxy card from casting any vote whatsoever for Mr. Clifford, (ii) prevented HG Vora and all PENN shareholders who did cast votes for Mr. Clifford from having those votes counted, and (iii) has caused HG Vora to incur substantial proxy solicitation expenses and fees in an effort to remedy Defendants' defective and materially false and misleading proxy materials.   Such allegations amply demonstrate the requisite injury and causation.

*Second*, Defendants argue that Plaintiffs' two state law claims under Pennsylvania's Business Corporation Law ("the BCL") fail to state claims as a matter of law.  But Defendants' arguments rest on the false premise that Pennsylvania courts have no authority to protect shareholder voting rights, despite the Pennsylvania Supreme Court establishing such authority

decades ago.  Contrary to Defendants' position, Pennsylvania law does not permit Pennsylvania corporations to act with impunity against the voting rights of their shareholders.

For the foregoing reasons, and as more fully detailed below, the Court should deny Defendants' Motion in full.

## FACTUAL BACKGROUND

Due to the Company's poor performance and disappointing leadership, on January 29, 2025, HG Vora announced its nomination of three highly qualified independent director candidates for the election to PENN's Board at the 2025 Annual Meeting:  Mr. Clifford, Johnny Hartnett, and Carlos Ruisanchez (together, the "Independent Nominees").  FAC ¶¶ 65–70.  All three candidates are highly qualified.  *Id.* ¶¶ 67–70.  In particular, Mr. Clifford possesses many of the "key qualifications" that the Company has identified for Board Members.  *Id.* ¶¶ 67-68.  He brings more than 30 years of experience delivering excellent returns for shareholders in the gaming industry—including as Chief Financial Officer of Penn National Gaming (the predecessor entity to PENN) for more than 12 years, during which time Mr. Clifford played an instrumental role in the Company's exponential growth driving a nearly 20x return for shareholders.  *Id*.

On April 15, 2025, the Company sent HG Vora a letter noting HG Vora's intent to nominate a slate of three incumbent directors for election at the Annual Meeting.  *Id.* ¶ 81.  The notice was sent pursuant to 17 C.F.R. § 240.14a-19(d), which is only required in the case of contested elections.  *Id.*  Thus, as of April 15, 2025, Defendants acknowledged that the Annual Meeting would be a contested election and that there would be a total of three seats up for election.

Just ten days later, on April 25, 2025, the Company changed course and issued a surprise press release announcing the Board Reduction Scheme (the "Press Release").  *Id.* ¶ 86.  Specifically, the Company announced that (i) one director had resigned, (ii) the "Board now

3

comprises eight directors," and (iii) the Board intended to nominate Hartnett and Ruisanchez "to fill the two Class II director seats available for election at the Annual Meeting." *Id.* ¶¶ 86–87. The Press Release said nothing about Mr. Clifford, nor did it give any explanation for the change. *Id*.

On April 28, 2025, PENN filed its definitive proxy statement with its proxy card, which is the document used by shareholders to vote. FAC ¶ 94-97. In violation of the Universal Proxy Rules, the definitive proxy omitted Mr. Clifford entirely from the proxy card, thereby preventing any shareholders opting to use Defendants' proxy card to vote for him. *Id.*

Several weeks later, after HG Vora filed this action on May 7, 2025, Dkt. 1, the Board publicly admitted that the motive behind the Board Reduction Scheme was to keep Mr. Clifford off the Board because the Board believed Mr. Clifford was not a "fitting…candidate," citing his lack of "open-mindedness" to current management. FAC ¶¶ 103–106. Specifically, the Board expressed its belief that two of the three Independent Nominees—Messrs. Hartnett and Ruisanchez—would "bring relevant expertise and experience in the gaming industry" to the Board, whereas the third Independent Nominee, Mr. Clifford, was "unsuited to serve." Dkt. 38-8 at 8-9. The Board further made the unilateral determination that "it is in the best interest of the Company, all shareholders and other constituents to nominate Messrs. Hartnett and Ruisanchez for election to the Board while, in the absence of a fitting third candidate, reducing the Board size[.]" *Id.* at 9. Thus, the Board made clear that the purpose of adopting the Board Reduction Scheme was to ensure that shareholders were only permitted to vote for Board-sanctioned candidates.

Unsettled by Defendants' decision to entrench themselves in office, proxy advisory firms began rallying around Mr. Clifford's candidacy. One such firm, Institutional Shareholder Services ("ISS"), recommended that shareholders vote for Mr. Clifford. FAC ¶¶ 108–09. As ISS put it:

> The board has emphasized Clifford's lack of open-mindedness. Even if one assumes this is a fair characterization (rather than just a polite way to say that he

does not entirely agree with the strategy), there is little evidence that the board has been able to hold management accountable, which suggests that a director who is not afraid to share a contrarian viewpoint may be a valuable addition. The more important point is that the board requires additional direct gaming industry experience, which Clifford can impart. He also has experience at the company itself, as a member of senior management and recently as a consultant.

*Id.*

Another independent proxy advisory firm, Egan-Jones, likewise recommended that shareholders vote for Mr. Clifford, noting PENN's "financial underperformance" and "significant governance concerns," including a staggered board, plurality voting, and lack of shareholder rights, as well as the Company's suspicious decision to "suddenly decrease" the number of available seats at the annual shareholder meeting. *Id.* ¶ 110.

Mr. Clifford's nomination and HG Vora's litigation also picked up broad support from shareholders that are "alarmed" over PENN's poor performance and attempts by leadership to "insulate themselves from shareholder accountability." *Id.* ¶ 111. Commentators have similarly lauded HG Vora for "waging a war against tyranny." *Id.*

On June 17, 2025, the Annual Meeting took place. *Id.* ¶ 112. At that meeting, 66,133,741 votes were cast on HG Vora's universal proxy card. *Id.* ¶ 115. Messrs. Hartnett and Ruisanchez were elected as directors, receiving 108,409,603 votes and 108,370,058 notes "FOR," respectively (on both the Company's and HG Vora's proxy card), representing 92.5% of the votes cast. *Id.* ¶ 116. Mr. Clifford received 61,962,937 "FOR" votes, representing 57% of the votes cast. *Id.* PENN's Bylaws provide that the candidates receiving the highest number of votes will be elected. *Id.* Therefore, Mr. Clifford was duly elected to the Board, along with Messrs. Hartnett and Ruisanchez at the Annual Meeting. *Id.* ¶ 116.

Notwithstanding those results, Defendants refused to seat Mr. Clifford and instructed the independent inspector of elections (the "Inspector") not to count or certify the votes with respect

to Mr. Clifford's candidacy—an instruction which the Inspector followed by excluding any tally of votes for Mr. Clifford from the official vote report. *Id.* ¶ 117.

The Company also issued a press release disclosing that "PENN shareholders elected the Company's two director nominees, Johnny Hartnett and Carlos Ruisanchez, to serve on the Company's Board of Directors." *Id.* ¶ 118. The press release made no mention of the millions of votes cast on HG Vora's universal proxy card or the votes cast for Mr. Clifford. *Id.*

Similarly, on June 23, 2025, the Company filed with the U.S. Securities and Exchange Commission ("SEC") a document stating that "[t]he following Class II Director nominees were elected to the Company's Board of Directors (the 'Board') to serve until the 2028 Annual Meeting of Shareholders" and listed only the votes cast for Mr. Hartnett and Mr. Ruisanchez. *Id.* ¶ 120 & n.13. Like the press release, this SEC filing made no mention of the millions of votes cast on HG Vora's universal proxy card or the votes cast for Mr. Clifford.

## LEGAL STANDARD

On a motion to dismiss, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). A defendant cannot meet this standard by raising disputed questions of fact. *See Hickey v. Univ. of Pittsburgh*, 81 F.4th 301, 316 (3d Cir. 2023) ("[W]e will not resolve [] factual question[s] at the motion-to-dismiss stage.").

## <u>ARGUMENT</u>

**A.      HG Vora States a Claim for Violations of Section 14(a) of the Exchange Act
and SEC Rules 14a-9 & 14a-19 (Counts I and II)**

Section 14(a) of the Exchange Act makes it unlawful to solicit shareholder votes via proxy in violation of SEC rules. 15 U.S.C.A. § 78n(a)(1).  Here, Plaintiffs adequately allege (FAC ¶¶ 130–156) that Defendants' proxy materials violated Section 14(a) because they omitted information that the SEC Rules "specifically require [be] disclos[ed]." *Jaroslawicz v. M&T Bank Corp.*, 962 F.3d 701, 710 (3d Cir. 2020).  Specifically, PENN's proxy materials violate three SEC Rules promulgated under Section 14(a): (1) the Universal Proxy Rules under Rule 14a-19, which require the proxy to "[s]et forth the names of all persons nominated for election" by PENN *and* HG Vora, and provide a means to vote for all such nominees, 17 C.F.R. § 240.14a-19; (2) Rule 14a-9, which prohibits the inclusion of false or misleading statements or omissions in proxy materials, including the "[f]ailure to so identify a proxy statement, form of proxy and other soliciting material as to clearly distinguish it from the soliciting material of any other person or persons soliciting for the same meeting or subject matter," 17 C.F.R. § 240.14a-9; and (3) Rule 14a-3, which requires that the definitive proxy include "a statement directing shareholders to refer to [HG Vora's] proxy statement," 17 C.F.R. §§ 240.14a-3(a)(1), 240.14a-101.

To bring a Section 14(a) claim, a plaintiff must adequately allege that: "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Jaroslawicz*, 962 F.3d at 710 (quoting *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 228 (3d Cir. 2007)). Plaintiffs have done so here.

*1.    PENN's Proxy Materials Omit Material Information*

In contravention of SEC Rules 14a-19, 14a-9, and 14a-3, PENN's proxy materials failed to direct shareholders to HG Vora's proxy statement and failed to list Mr. Clifford as a nominee on its proxy card.  FAC ¶¶ 94–97, 138–39, 150.  The failure to include this information misled shareholders into believing they could not vote for Mr. Clifford, and a reasonable PENN shareholder would have considered this information important in deciding how to exercise their voting rights at the 2025 Annual Meeting and in future elections.  *Id.* ¶ 140.  Defendants do not dispute that they omitted this information from their proxy materials.  Instead, they argue that the Rules do not apply to them.  For several reasons, Defendants are wrong.

*First*, Defendants claim that they were not required to make the foregoing disclosures because "PENN's 2025 Annual Meeting was not a contested election."  Mot. 9–10, 14–15.  Not so.  As Defendants acknowledge, Mot. 15, an election is "contested" wherever a shareholder "solicit[s] proxies in support of director nominees other than the registrant's nominees."  *See* 17 C.F.R. § 240.14a-19(a).  Here, HG Vora solicited proxies for all three candidates it nominated, while PENN solicited proxies for only two of those candidates.  FAC ¶ 95, 99, 102.  The election was therefore contested.[1]

At most, Defendants' contentions raise a disputed question of fact not suitable for resolution on a motion to dismiss.  *See Hickey*, 81 F.4th at 316.  The First Amended Complaint alleges that the Annual Meeting was a contested election, FAC ¶¶ 95-96, 161, 165, 170, and that

---

[1]  Defendants falsely claim that HG Vora "concedes" the election was uncontested because "the power to make that decision [to reduce the number of board seats] was within the board's authority," and therefore HG Vora nominated the same two candidates for the two available seats.  Mot. 15.  This is not true.  HG Vora clearly alleges that "[w]hile boards are permitted to adjust their own size *in certain circumstances*, they may not do so in the face of a contested election or to thwart shareholder voting rights," FAC ¶ 12 (emphasis added), which is what happened here.

Defendants themselves acknowledged as much when they delivered a universal proxy notice pursuant to Rule 14a-19, *see* FAC ¶¶ 80-81, which is only required in the case of contested elections. Defendants delivered this notice on April 15, 2025, just days before PENN filed its definitive proxy statement for the Annual Meeting. *Id.* at ¶¶ 80–81, 94. As such, the Court should not ignore these well-pled allegations involving contemporaneous communications in favor of Defendants' post-hoc litigation posturing.

Moreover, Defendants already have acknowledged that HG Vora's proxy card is valid. They had to, as without the votes on HG Vora's proxy card a quorum would not have been achieved at the Annual Meeting and no business could have been conducted. FAC ¶ 115. Having acknowledged the validity of HG Vora's proxy card, Defendants are not permitted to pick and choose which portions they want to give legal effect to and toss out votes cast for Mr. Clifford. *See S'holders Protective Comm. v. California Time Petroleum*, 1971 WL 321, at *2 (Del. Ch. Sept. 23, 1971) ("[A] proxy may not be deemed valid for the purpose of constituting a quorum and invalid for the purpose of voting. . . . [Defendants] are estopped to deny the validity of plaintiffs' proxies for voting purposes.").

*Second*, Defendants argue that their disclosure violations are not material because the omitted information was supposedly "publicly disclosed" elsewhere, and therefore part of the "total mix" of information for shareholders. Mot. 10. This is, again, a fact question not suitable for resolution on a motion to dismiss. *See In re Urb. Outfitters, Inc. Sec. Litig.*, 103 F. Supp. 3d 635, 650-51 (E.D. Pa. 2015) ("Generally, materiality is an issue of fact to be decided by the trier of fact" and rejecting argument that the relevant "information was already publicly available."). It also ignores clear Third Circuit precedent that an omission violates Section 14(a) where, as here,

"the SEC regulations specifically require disclosure of the omitted information." *Jaroslawicz*, 962 F.3d at 710.

Critically, Defendants' argument totally misapprehends the central purpose of the Universal Proxy Rules, which the U.S. Securities and Exchange Commission ("SEC") enacted to solve a very particular problem: a shareholder's inability to "vote by proxy in the same manner as they could do if attending a shareholder meeting." Universal Proxy, Release No. 34419, 2021 WL 5545055 (Nov. 17, 2021). Prior to the Universal Proxy Rules, in contested elections shareholders voting by proxy were limited to voting only for a particular slate of candidates, without the ability to "mix and match" different director candidates in the manner that could be done if attending the meeting in person. The Universal Proxy Rules solve this problem by requiring both sides to set forth the names of *all* candidates, thereby "expand[ing] the voting alternatives of shareholders" and "allow[ing] all shareholders to vote for their preferred candidate[s]." *Id.*; *see also Kellner v. AIM ImmunoTech Inc.*, 307 A.3d 998, 1023 (Del. Ch. 2023) (Rule 14a-19 requires "the company [to] include the dissident nominees on a universal proxy card, allowing stockholders to mix and match between slates"), *judgment entered,* (Del. Ch. 2024), and *aff'd in part, rev'd in part,* 320 A.3d 239 (Del. 2024). As such, no amount of disclosure of Mr. Clifford's name elsewhere in Defendants' proxy materials can cure their defective proxy card.[2]

---

[2] Additionally, none of Defendants' other disclosures correct the violations at issue, *i.e.*, none of them "direct[] shareholders to refer to" HG Vora's proxy statement, or state "the names of all persons nominated for election" by HG Vora. FAC ¶¶ 134–35, 138–39, 150. Defendants point to a "Supplement to the Proxy Statement," where they belatedly disclosed that "[t]he two candidates whom the Company's Board of Directors has nominated for election at the Annual Meeting, Messrs. Johnny Hartnett and Carlos Ruisanchez, were originally recommended for nomination by [HG Vora]," Dkt. 38-5 at 3, and a May 19, 2025 "Letter to Shareholders," where PENN stated that "HG Vora is also soliciting proxies for a third director candidate, despite the fact there are only two director seats up for election." Dkt. 38-9 at 3. But none of those disclosures comply with the letter or the spirit of the SEC Rules, as they do not direct shareholders to HG Vora's proxy materials and do not permit shareholders to cast votes for Mr. Clifford on PENN's proxy card.

*Third*, Defendants contend that they were not required to follow the SEC Rules because Mr. Clifford's "nomination was improper under PENN's bylaws." Mot. 15. Wrong again. Defendants acknowledge that PENN was required to list all "duly nominated" candidates, Mot. 15, and Plaintiffs allege that Mr. Clifford was duly nominated, FAC ¶¶ 65–75. Setting aside that Defendants once again seek to raise factual disputes not appropriate on a motion to dismiss, they identify no defects with Mr. Clifford's nomination, nor have they ever stated that his nomination was invalid or rejected pursuant to the nomination requirements in the Company's advance notice bylaws. To the contrary, Defendants acknowledge that "HG Vora subsequently corrected" the alleged "deficiencies" Defendants had identified and so they "evaluated his candidacy and interviewed him" as part of the process. Mot. 4.

While the Company takes the position that Mr. Clifford's nomination was invalid because, they claim, there were only two Board seats up for election, it points to no provision in PENN's bylaws (or other rule) that prevents shareholders from duly nominating more candidates than there are seats. In fact, the same SEC guidance that Defendants cite acknowledges it is not improper for either the registrant or a dissident shareholder to include "the names of more nominees than director seats up for election."[3]

Further, as Defendants concede, even if PENN were permitted to omit Mr. Clifford from its proxy card, PENN still was required to disclose "in its proxy statement its determination that the [HG Vora's] director nominations are invalid" and "a brief description of the basis for that determination." Mot. 16. PENN did not make those required disclosures. In fact, PENN never disclosed that Mr. Clifford's nomination was invalid (because it was not), instead claiming that

---

[3] SEC Proxy Rules and Schedules 14A/14C Compliance and Disclosure Interpretations, Question 139.01 (last updated Jan. 27, 2025), *available at* https://www.sec.gov/rules-regulations/staff-guidance/compliance-disclosure-interpretations/proxy-rules-schedules-14a14c.

the Company determined Mr. Clifford was "unsuited to serve on the Board" and that it reduced the Board size "in the absence of a fitting third candidate." *Id.* at 16–17.

*Finally*, Defendants claim they were not required to include Mr. Clifford on their proxy card because HG Vora's proxy card stated that proxies solicited for Mr. Clifford would only be voted if there were three seats up for election. Mot. 18. But, even if this were a valid argument (it is not), it ignores that Defendants' proxy card was filed nearly two weeks before HG Vora filed its proxy card, FAC ¶¶ 95-97, 102, and was therefore deficient when filed. It also begs the question at issue in this litigation: whether the Board Reduction Scheme is valid and how many seats were up for election at the Annual Meeting. HG Vora's consistent position has been that the Board Reduction Scheme was a nullity, there were three seats up for election, and thus shareholders should have been able to cast votes for Mr. Clifford. Defendants' exclusion of Mr. Clifford from their proxy card therefore violated the Universal Proxy Rules.

Plaintiffs have therefore adequately alleged that Defendants' proxy materials failed to comply with the disclosure provisions of the federal securities laws.

### 2.     The Omission of Information Required by the SEC Rules Caused Injury

Plaintiffs were injured by the material omissions in Defendants' proxy materials. As pled in the FAC, Plaintiffs "have been prevented from having their votes counted for all *three* Class II director seats" and "have incurred substantial proxy solicitation expenses and fees in connection with preparing and issuing Plaintiffs' own proxy materials" to "correct against Defendants' false and misleading proxy materials." FAC ¶¶ 142, 145. Further, the inaccurate proxy statement impinged on shareholders' corporate suffrage rights and the integrity of the electoral process, including because approximately 50 million votes were cast via the Company's proxy card, which

did not list Mr. Clifford as a nominee, and because the 62 million votes cast for Mr. Clifford on HG Vora's proxy card were not counted. *See, e.g.*, FAC ¶¶ 2, 115–21, 140–43.

Defendants claim HG Vora's allegations are inadequate because HG Vora itself was not misled by PENN's proxy statement. Mot. 13. But "whether or not [HG Vora] was personally deceived is not the issue." *Stricklin v. Ferland*, 1999 WL 961245, at *6 (E.D. Pa. Oct. 13, 1999) (finding a plaintiff had standing to assert a Section 14(a) claim despite having not voted or read the proxy statement in dispute). "The damage suffered results not from the deceit practiced on [plaintiff] alone but rather from the deceit practiced on the stockholders as a group." *Id.* (quoting *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)).[4] Plaintiffs have adequately alleged such deceit. *E.g.*, FAC ¶ 100 ("As with the proxy card appended to its Definitive Proxy, the April 29 proxy card omits the information required by SEC Rule 14a-19, including the candidacy of Clifford.").

Defendants also claim that the HG Vora would have had to incur the same costs to prepare and file its own proxy materials regardless of whether or not PENN's proxy materials violated Section 14(a). Mot. 13. But the FAC specifically alleges that Plaintiffs incurred these costs to "correct against Defendants' false and misleading proxy materials." FAC ¶ 142. Courts have found similar allegations adequate at the motion to dismiss stage. *Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*, No. 20-CV-9992 (PAC), 2021 WL 4443258, at *9 (S.D.N.Y. Sept. 27, 2021)

---

[4] The case Defendants cite similarly considered "the effect [the SEC Rule violation] had on the collective rights and interests of all [] stockholders," but concluded that, on summary judgement, the plaintiff had not proven that the violation "injured their fundamental rights of corporate suffrage" or "impaired the integrity of the election." *Ash v. GAF Corp.*, 723 F.2d 1090, 1095 (3d Cir. 1983).

(loss causation adequately pled where complaint alleges plaintiff "was forced to expend unnecessary [] resources in waging a proxy contest").[5]

### 3.    The Proxy Solicitation Was An Essential Link in the Board Reduction Scheme

Defendants' proxy materials were an essential link in effectuating the Board Reduction Scheme. FAC ¶ 145. Defendants' failure to include Mr. Clifford on the Company's proxy card prevented shareholders from voting for Mr. Clifford and led to the Inspector not counting or certifying the "FOR" votes cast for Mr. Clifford on HG Vora's proxy card. *Id.* ¶ 117. Therefore, despite Mr. Clifford receiving 57% of the vote, many shareholders were prevented from voting and Defendants refused to seat him. *Id.* ¶¶ 116, 121. Defendants claim it was the Board's decision to decrease the size of the Board from nine to eight, and not the misleading proxy materials, that caused Mr. Clifford not to be seated. Mot. 14. Defendants again miss the mark.

The Board Reduction Scheme was not fully implemented until the Annual Meeting where Defendants—after preventing millions of shareholders from casting any vote for Mr. Clifford— refused to count the votes that were cast for Mr. Clifford, and then refused to seat Mr. Clifford. These allegations are enough to establish transaction causation. *See Solfanelli v. Mainwaring*, 1992 WL 332223, at *4 (E.D. Pa. Nov. 4, 1992) (plaintiff adequately alleged causation where "the 'transaction' is the election of directors" and "the proxy solicitation was an essential link in the election of the directors"); *In re Meridian Sec. Litig.*, 772 F. Supp. 223, 229 (E.D. Pa. 1991) (transaction causation met where "the harm alleged is the election of corporate directors on the

---

[5] Defendants' reliance on *Royal Bus. Grp., Inc.* v. *Realist, Inc.*, 933 F.2d 1056 (1st Cir. 1991) for the proposition that injury is lacking is entirely misplaced. *See* Mot. 13. *Royal* dealt with "disappointed proxy contestants," did not address loss causation, and expressly found that standing under Section 14(a) exists to promote "the free exercise of the voting rights of shareholders." *Id.* at 1063.

basis of false and misleading proxy statements" regardless of whether "the omissions or misstatements decisively affected voting").

### B.    HG Vora States a Claim Under Pennsylvania's Business Corporation Law (Counts III and V)

HG Vora has adequately pleaded its state law claims under the BCL.  Those claims seek relief under Pennsylvania's Judicial Supervision Statute, 15 Pa.C.S. §§ 1791–93, which affords courts broad authority to determine the validity of corporate actions.  *Traher v. Republic First Bancorp, Inc.*, 432 F.Supp.3d 533, 542 (E.D. Pa. 2020).  Count III asserts that the Board Reduction Scheme violates shareholders' fundamental voting rights, and Count V asserts that the Board Reduction Scheme contravenes Section 1724(b), which requires that each class of a Pennsylvania corporation with classified boards be "as nearly equal in number as possible."  15 Pa.C.S. § 1724(b).

#### 1.    HG Vora Has Stated a Claim Under 15 Pa.C.S. § 1793 Based on the Invalidity of the Board Reduction Scheme Which Violates Shareholder Voting Rights

In a proceeding under the Judicial Supervision Statute, 15 Pa.C.S. §§ 1791–93, courts are empowered to "determine the validity of [] corporate action," which expressly includes the authority to adjudicate the validity of "the election, appointment, designation or other selection…of directors…of a business corporation" and any other "matter" that may or must be "submitted for action to the shareholders, directors or officers" of a corporation.  15 Pa.C.S. §§ 1791-1793.  The statute authorizes "any person aggrieved by any corporate action" to bring a claim under this section.  15 Pa.C.S.  § 1793.  A person is "aggrieved" under the Judicial Supervision Statute if he can show "harm to his interest' caused by the allegedly invalid 'corporate action.'"  *Traher*, 432 F.Supp.3d at 542.  "A court's power under Section 1793 and its related provisions is broad."  *Id.* at 541.

15

Here, HG Vora has adequately alleged the existence of a "corporate action"—the Board Reduction Scheme (FAC ¶¶ 160, 163)—which Defendants have admitted was implemented for the express purpose of preventing the shareholders from voting for, electing, and seating Mr. Clifford (*id.* ¶¶ 103-106), and that it is a "person aggrieved" by the Board Reduction Scheme, *id.* ¶¶ 161, 164.  Nothing more is required to bring a claim under Section 1793, particularly at the pleading stage where only a "colorable claim of impropriety is required."  *Simms v. Exeter Architectural Prods., Inc.*, 868 F. Supp. 677, 683 (M.D. Pa. 1994) (denying motion to dismiss § 1793 claim); *see also Traher*, 432 F. Supp. 3d at 542 (eschewing a "literal" reading of Section 1793, noting that the statute is "cast in broad terms" and it "is therefore inappropriate to dispose of Plaintiff's Section 1793 claim on a Rule 12 motion to dismiss").

Indeed, Section 1793 is particularly applicable here, as Defendants enacted the Board Reduction Scheme for the express purpose of preventing shareholders from voting for Mr. Clifford because they believed he was not a "fitting" candidate.  FAC ¶¶ 103–106.  As the Delaware Court of Chancery[6] has explained, in a case endorsed by Pennsylvania courts, such conduct inherently undermines well-established principles of corporate governance:

> The shareholder franchise is the ideological underpinning upon which the legitimacy of directorial power rests. Generally, shareholders have only two protections against perceived inadequate business performance. They may sell their stock (which, if done in sufficient numbers, may so affect security prices as to create an incentive for altered managerial performance), or they may vote to replace incumbent board members.

*Blasius Indus., Inc. v. Atlas Corp.*, 564 A.2d 651, 659 (Del. Ch. 1988); *see also Wareheim v. Wareheim*, 2001 PA Super 141, ¶¶ 29–31 (Pa. Super. 2001), *rev'd on other grounds,* 580 Pa. 201 (2004) (citing *Blasius* with approval, and noting that protecting voting rights "helps ensure

---

[6]  Pennsylvania law generally considers Delaware authority "instructive" on Pennsylvania corporate law issues for which there is a dearth of Pennsylvania law. *Johnson v. Farm J., Inc.*, 2019 WL 3530423, at *4 (E.D. Pa. Aug. 1, 2019) .

corporate democracy, the principle that the owners of a corporation should control the direction that their corporation takes").

Accordingly, it is up to the shareholders, as owners of the Company, to decide whether a duly-nominated director candidate is "fitting," not the other way around, and courts repeatedly have stricken a board's efforts to interfere with this right. *See Vejseli v. Duffy*, 2025 WL 1452842, at *13 (Del. Ch. May 21, 2025) (holding that "[r]educing the number of directors so that the Board, rather than the stockholders, could later identify better candidates is not a legitimate corporate purpose," and "'[t]he notion that directors know better than the stockholders about who should be on the board is no justification at all"); *Pell v. Kill*, 135 A.3d 764, 769, 788 (Del. Ch. 2016) ("when facing an electoral contest, incumbent directors are not entitled to determine the outcome for the stockholders.  Stockholders elect directors, not the other way around" and therefore board improperly "imposed its favored outcome on the stockholders" and "eliminat[ed] the possibility of success for two seats" by reducing the number of seats up for election from three to one).[7]

Under Defendants' rationale, the Board could perpetuate itself in office indefinitely and without challenge.  All it would need to do is declare that the Board reasonably believes that it knows better than the shareholders which director candidates are in the best interests of the corporation, and could subsequently prevent any shareholder-nominated candidates from ever being voted on, let alone elected.  In addition, Defendants' position would mean that nothing can stop the Board from expanding its size so that it can fill the seat Mr. Clifford should have held,

---

[7] *See also MM Companies, Inc. v. Liquid Audio, Inc.*, 813 A.2d 1118, 1132 (Del. 2003) (noting "the essential role of corporate democracy in maintaining the proper allocation of power between the shareholders and the Board" and holding that board expansion from five to seven members in the face of proxy contest was invalid); *venBio Select Advisor LLC v. Immunodynamics, Inc.*, Case No. 2017-0108-JTL (Del. Ch. Mar. 9, 2017), Tr. at 12:12-20 (critiquing board for acting "for the purpose of affecting the election contest and because they believed that they knew better than the stockholders who should determine the future path of the Company and what it should be").

with its selected candidate remaining in office until a replacement is elected at the 2028 annual meeting.  This would be an absurd result, yet permissible under Defendants' logic.

For those reasons, HG Vora's § 1793 claim amply pleads a "colorable claim of impropriety," *see Simms*, 868 F. Supp. at 683, and Defendants' Motion should therefore be denied.

### 2. *Defendants' Reading of Section 1793 Has No Basis in Law*

Defendants do not meaningfully engage with the foregoing principles.  Instead, Defendants ignore the plain text of Section 1793 and ask this Court to sweep aside decades of decisional authority and rule as a matter of law that shareholders in Pennsylvania have no redress for their loss of voting rights.  Mot. 19-22.  For multiple reasons, Defendants are wrong.

*First*, rather than engage with the plain text of the Judicial Supervision Statute, Defendants claim that actions under § 1793 require a showing that "a substantive law that has been violated." Mot. 19.  However, no such requirement exists in the statute or in the cases Defendants cite.  For example, Defendants invoke *High River Ltd. P'ship v. Mylan Lab'ys, Inc.*, 383 F. Supp. 2d 660 (M.D. Pa. 2005), which they claim stands for the proposition that Section 1793 "*requires*" a party to "assert[] a cognizable violation of Pennsylvania law."  Mot. 19 (emphasis added).  But the *High River* Court said no such thing, and in fact only found that a Section 1793 claim *can* be based on a violation of the BCL, such as "patently unreasonable" bylaws, not that it ***must*** be.  *See id.* at 665.[8]

Importantly, the cases applying the Judicial Supervision Statute have not looked to whether there was a violation of "substantive law," as Defendants argue, but rather have taken a broad view

---

[8] Similarly, *Hornung v. Schauseil Ins. Assocs., Inc.*, 422 Pa. Super. 472 (1993) does not stand for Defendants' stated proposition that Section 1793 is "not a separate and distinct cause of action." Mot. 19.  In that case, the Section 1793 claim sought a declaration as to "whether [plaintiff] is entitled to the relief requested" for his other claims in that same action.  The plaintiff was therefore *not* a asserting a separate and distinct cause of action.  *Hornung*, 422 Pa. Super. at 477.

of judicial authority and assessed equitable considerations to determine whether relief is appropriate. *See Traher*, 432 F.Supp.3d at 541 (noting § 1793 is cast in "broad terms" and judicial review is available for "*any matter*" where the "state law or the corporation's bylaws allow to be submitted for action to the shareholders" (emphasis added)); *Simms*, 868 F. Supp. at 683 (looking to "colorable claim of impropriety"). Given this guidance, there is no question that Plaintiffs have stated a claim.

*Second*, Defendants baldly claim that Pennsylvania law offers no redress to shareholders for the loss of their voting rights. Not so. In *Reifsnyder*, the Pennsylvania Supreme Court unequivocally held that "[t]he right to vote is basic and fundamental to most shares of stock," and guaranteed shareholders the ability to "enforce and protect such rights by bringing a direct action." *Reifsnyder v. Pittsburgh Outdoor Advert. Co.*, 173 A.2d 319, 322 (1961). Decisions subsequent to *Reifsnyder* have further "recognized our mandate in protecting the right of shareholders to vote[,]" which is "among the most fundamental rights of ownership of voting shares." *Warehime*, 2001 PA Super 141, ¶¶ 29–31. Accordingly, corporate actions can be found "improper ... because of the principle of corporate democracy ... which bars actions otherwise properly taken that are designed to undermine voting rights." *Id.* ¶ 39 n.13; *see also Jewelcor Mgmt., Inc. v. Thistle Grp. Holdings, Co.*, 60 Pa. D. & C.4th 391 (Com. Pl. 2002) (where defendant "manipulate[d] a corporate election to perpetuate [their] own control of the corporation," they engaged in an "intentional and improper infringement on [plaintiff's] rights as a shareholder to contest a Board election."); *Wurtzel v. Park Towne Place Apartments Ltd. P'ship*, 62 Pa. D. & C.4th 330, 347 (Com. Pl. 2001) (finding irreparable harm under Pennsylvania law where plaintiff risked loss of right to vote on merger, explaining that "equity will certainly bar the company from preventing the shareholder from voting at all").

While Defendants seek to write off this authority, they offer little more than a cramped reading of the caselaw, seeking to draw distinctions with no difference. For example, Defendants contend that *Reifsnyder* is inapplicable, asserting it only applies in contexts involving "a fiduciary duty owed by the majority shareholders to the minority." Mot. 20. But no such limit appears in the opinion, and the *Reifsnyder* Court in fact framed its support of shareholder voting rights in broad terms. *See Reifsnyder*, 173 A.2d at 322 n.9 ("There is no question that a shareholder may bring a direct action to protect his voting rights.").[9]

Defendants similarly seek to distinguish *Warehime* because it concerned the reelection of an incumbent director, *see* Mot. 21, but ignore that the court broadly found that the "principle of corporate democracy" can bar corporate action "designed to undermine voting rights." *Warehime* 2001 PA Super 141, ¶ 31 n.13.[10] Here, as the FAC explains, the effect of the Board Reduction Scheme was to entrench the incumbent directors and thwart shareholder democracy by giving the Company "much better odds of turning two election cycles into three before a majority of the Board will turn over" and "lessen the influence of fresh, independent directors in the boardroom." FAC ¶¶ 89–93. Accordingly, *Warehime* is directly applicable.

---

[9] Defendants' argument that there was no harm to HG Vora because it was "**able** to vote all of its shares at the Annual Meeting," Mot. 20 (emphasis added), is frivolous. In so contending, Defendants ignore that the ability to vote is meaningless given that PENN did not count those votes, FAC ¶ 117, as well as the fact that the millions of shareholders who voted on PENN's proxy card were unable to vote for Mr. Clifford.

[10] Nor is *Warehime* bad law. As Defendants acknowledge (Mot. 21), there, the Supreme Court reversed the appellate court decision on the grounds that it applied the wrong standard of review. *Warehime v. Warehime*, 580 Pa. 201, 208 (2004) ("we conclude that the Superior Court erred in its choice of standard of review for this matter" and applying deferential standard to trial court's decision denying preliminary injunction based on a finding of no irreparable harm). Thus, its reversal in no way diminishes the significance of the court's statements about the importance of a shareholder's right to vote or the availability of a direct cause of action under the statute distinct from any claim of breach of fiduciary duty.

Defendants further argue that *Reifsnyder* should be disregarded because it was issued before Pennsylvania adopted Section 1717 of the BCL in 1990, which provides that directors owe fiduciary duties "solely to the business corporation." Mot. 20–21 (citing 15 Pa. C.S. § 1717). This is a non-sequitur. HG Vora's Judicial Supervision claim is not styled as a breach of fiduciary duty claim, and *Reifsnyder* (along with subsequent decisional law) is unequivocally clear that direct actions lie to protect shareholder voting rights. *Reifsnyder*, 173 A.2d at 322 ("[T]he shareholder could enforce and protect such [voting] rights by bringing a direct action."); *Jack v. S. Park Ventures, LLC*, 2018 WL 1158370, at *4 (S.D. Ohio Mar. 5, 2018) (applying Pennsylvania law, finding that shareholders have standing to sue where they "allege a direct, personal injury—that is independent of any injury to the corporation"); *see also Warehime*, 2001 PA Super 141, ¶ 39 n.13 (the 1990 Amendments to the BCL do not "validate corporate actions designed to undermine shareholder's voting rights"). Infringement of the right to vote for the directors of a corporation is unquestionably one such injury—a fact recognized by the legislators who adopted Section 1717. *See, e.g.*, Pa.Legis.J., House, Apr. 3, 1990, at 549 (shareholders "are still going to have the ability to change the board of directors"); *id.* at 550 (it is "extremely important to preserve those normal shareholders' rights on a whole range of corporate governance questions").

*Finally*, Defendants fault HG Vora for citing to Delaware cases holding that nearly identical behavior by boards of directors is unlawful, but Pennsylvania generally considers Delaware authority "instructive" on Pennsylvania corporate law issues for which there is a dearth of Pennsylvania law. *Johnson*, 2019 WL 3530423, at *4. This is particularly true here given that Pennsylvania's Judicial Supervision Statute is derived from Delaware General Corporation Law § 225, which similarly authorizes the Court of Chancery to "determine the validity of any election, appointment, removal or resignation of any director or officer of any corporation." 15 Pa. C.S. §

1791, Committee Comment; 8 Del. C. § 225.  In fact, the *Warehime* Court acknowledged that "[n]ot only do the courts of this commonwealth protect the right of shareholders to vote, but we recognize [*Blasius*] as persuasive." *Warehime*, 2001 PA Super 141, ¶ 33.

> 3.    *HG Vora Has Stated a Claim Under 15 Pa.C.S. § 1724 Because the Board Reduction Scheme Caused the Board's Classes To Become Unequal in Number*

The Board Reduction Scheme violates BCL Section 1724(b) and Article 6(a) of the Company's Articles, both of which require that each class of a Pennsylvania corporation with classified boards be "as nearly equal in number as possible." 15 Pa.C.S § 1724(b); FAC ¶ 179. Defendants make a merits argument—that this requirement has been satisfied here because "[b]y simple arithmetic, the allocation of eight directors across three classes cannot be any closer to 'as nearly equal' than 3-2-3." Mot. 23.  But Defendants' contention assumes, contrary to the FAC's allegations, *see* FAC ¶¶ 10–12, 88, 116–21, 153, that "PENN's board of directors now comprises eight directors across three director classes." Mot. 23.  On a motion to dismiss, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 233.  The Court, therefore, need not accept as true Defendants contrary claim that the Board "comprises eight directors."

Further, it ignores that under the plain language of the statute it was "possible" to have a Board with nine seats (and three equal classes). *See* FAC ¶¶ 179-80.  In fact, as late as April 15, 2025, Defendants acknowledged there would be a total of three seats up for election at the 2025 Annual Meeting. *Id.* ¶ 81.  Therefore, the FAC adequately alleges that it was "possible" to have three equal classes of three directors each and Defendants' actions violate the BCL by purporting to make the classes unequal. *See id.* ¶¶ 179-80.

4. *Regardless of the Court's Ruling on the Federal Claims, the Court Should Retain Jurisdiction Over This Action*

Defendants argue that if the Court dismisses the federal claims under Rule 12(b)(6), it should dismiss the state law claims under 12(b)(1). Mot. 18–19. As Defendants acknowledge, the Court has discretion whether or not to do that. *See* 28 U.S.C.§ 1367(c)(3) ("The district courts ***may*** decline to exercise supplemental jurisdiction over a claim under subsection (a) if… the district court has dismissed all claims over which it has original jurisdiction" (emphasis added)). Given that the nomination window for the election of directors at the next annual meeting runs from January 18, 2026 to February 17, 2026, Dkt. 1-4 at 97, Plaintiffs respectfully submit that it is in the interest of justice for the Court to exercise its discretion to retain jurisdiction so that Defendants' wrongdoing does not affect yet another corporate election.

## C. The Court Should Partially Lift the PSLRA Stay of Discovery

While the motion to dismiss remains pending, the Court should partially lift the stay of discovery under the Private Securities Litigation Reform Act of 1995 ("PSLRA") and order Defendants to produce all documents to Plaintiffs that were produced to the Special Litigation Committee (the "SLC").[11] Pursuant to the PSLRA, a court may lift the PSLRA stay where it finds "that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." *In re Royal Ahold N.V. Sec. & Erisa Litig.*, 220 F.R.D. 246, 249 (D. Md. 2004) (citing 15 U.S.C.A. § 78u-4(b)(3)(B)).

Here, the documents produced to the SLC constitute "particularized discovery," and "the burden of producing the materials should be slight, considering that the defendants have previously produced them to other entities." *Royal*, 220 F.R.D. at 249. And "[w]ithout access to key

---

[11] On August 1, 2025, the SLC reported to the Court that the Company had produced "over 14,000 pages of materials" to the SLC. Dkt. 31 at 2.

documents that have already been produced to [the SLC], [Plaintiffs] could suffer a severe disadvantage in formulating their litigation and settlement strategy." *Id.* at 252; *see also New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 2015 WL 1565462, at *3 (E.D. Mich. Apr. 8, 2015) ("Undue prejudice has been found where the plaintiff lacks access to documents already produced to governmental and other agencies and in other lawsuits"); *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305–06 (S.D.N.Y. 2002) (similar).

Moreover, allowing discovery to proceed will avoid undue prejudice by aiding the efficient resolution of this action, which is critical given that PENN's 2026 annual meeting of shareholders is rapidly approaching. *See Ashford Hosp. Tr., Inc. v. Cygnus Cap., Inc.*, 2021 WL 3631142, at *5 (N.D. Tex. Feb. 18, 2021) (lifting PSLRA discovery stay, finding undue prejudice where "Plaintiff's annual meeting will likely be held in the spring of 2021"). Indeed, the window to nominate directors for that meeting is only open between January 18, 2026 and February 17, 2026, and providing certainty regarding the composition of the board in advance of that nomination window and meeting is in the interest of all parties. *See Salamone v. Gorman*, 2014 WL 3905598, at *2 (Del. Ch. July 31, 2014) (noting shareholders can suffer irreparable harm "by the uncertainty concerning the composition of its legitimate board of directors").

## **CONCLUSION**

For all the foregoing reasons, HG Vora respectfully requests the Court deny Defendants' motion and lift the PSLRA stay. If this Court disagrees, any dismissal should be without prejudice and with leave to amend.

Dated: October 9, 2025

/s/ Michael E. Swartz
Michael E. Swartz (*pro hac vice*)
Manisha M. Sheth (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN LLP
295 5th Avenue, 9th Floor
New York, New York 10016
Tel: 212-849-7000
michaelswartz@quinnemanuel.com
manishasheth@quinnemanuel.com

Daniel E. Rhynhart (PA Bar No. 78248)
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Tel: 215-569-5371
dan.rhynhart@blankrome.com

Richard M. Brand (*pro hac vice*)
WHITE & CASE LLP
1221 6th Avenue
New York, New York 10020
Tel: 212-819-8200
richard.brand@whitecase.com

*Counsel for Plaintiffs HG Vora Capital
Management, LLC, HG Vora Special
Opportunities Master Fund, Ltd., and
Downriver Series LP – Segregated Portfolio
C*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a true and correct copy of Plaintiffs' Memorandum of Law in Opposition to Defendants' Amended Motion to Dismiss and the Proposed Order Denying Defendants' Motion to Dismiss to be served upon all counsel of record in accordance with Federal Rule of Civil Procedure 5(b).

Dated: October 9, 2025

/s/ *Michael E. Swartz*
Michael E. Swartz (*pro hac vice*)
Manisha M. Sheth (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN LLP
295 5th Avenue, 9th Floor
New York, New York 10016
Tel: 212-849-7000
michaelswartz@quinnemanuel.com
manishasheth@quinnemanuel.com

Daniel E. Rhynhart (PA Bar No. 78248)
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Tel: 215-569-5371
dan.rhynhart@blankrome.com

Richard M. Brand (*pro hac vice*)
WHITE & CASE LLP
1221 6th Avenue
New York, New York 10020
Tel: 212-819-8200
richard.brand@whitecase.com

*Counsel for Plaintiffs HG Vora Capital Management, LLC, HG Vora Special Opportunities Master Fund, Ltd., and Downriver Series LP – Segregated Portfolio C*